## ISAAC EKBERG v. SWEDISH-AMERICAN PUBLISHING COMPANY and Others.[1]

April 21, 1911.

Nos. 16,846—(51[2]–32[3]).

**Corporation — purchase of assets by managing officer.**

The managing officer of a corporation is a trustee for the stockholders, and is bound to act in relation to the corporate property with the utmost good faith. A sale of the assets of a corporation to its managing officer will be scrutinized carefully, and the evidence should be clear, to justify the conclusion that it was made in good faith.

**Sale — finding not supported by the evidence.**

The finding of the trial court that the sale in this case was made in good faith and was valid is not justified by the evidence.

**Evidence—laches.**

The evidence does not sustain the decision that plaintiff is not a stockholder in the defendant corporation, or that he is barred by laches from asserting his rights to an accounting in this action.

Action in the district court for Hennepin county on behalf of the Swedish-American Publishing Company. The substance of the

[1]Reported in 130 N. W. 1029.          [3]April, 1911; term calendar.
[2]October, 1910, term calendar.

complaint and separate answer of defendant Turnblad are given at the beginning of the opinion. The case was tried before Brooks, J., who made findings in favor of defendant Turnblad. Plaintiff's motion for a new trial was denied by Hale, J., who also denied a motion for amended findings, on the ground that he, not having heard the evidence, had no power to amend or change the decision of Judge Brooks. From the order denying these motions, plaintiff appealed. Reversed, and a new trial granted.

*H. E. Fryberger,* for appellant.

*Lars M. Rand* and *Norton M. Cross,* for respondents.

BUNN, J.

This action was brought by plaintiff, on behalf of defendant Swedish-American Publishing Company, a corporation, and on behalf of himself as a stockholder, against defendant Swan J. Turnblad, for an accounting and other relief. The corporation was made a party defendant. Another suit between the same parties was consolidated with this by order of the court, and they were tried together. The substance of the allegations of the complaint is that plaintiff was a stockholder in the corporation, which was the owner and engaged in the publication of a newspaper called the Svenska Amerikanska Posten; that Turnblad was the manager and in control of the corporation; that large profits have been earned by the corporation, but no dividends declared; that Turnblad wrongfully converted to his own use all the profits, while continually representing to plaintiff that the paper was running at a loss; that an alleged sale of the newspaper to defendant Christine Turnblad in October, 1897, was fraudulent and void, and a part of a fraudulent scheme of Turnblad to defraud the corporation and its stockholders.

The answer in substance made three defenses: (1) That plaintiff was not a stockholder; (2) that the corporation carried on its business at a loss up to October, 1897, and that on October 19, 1897, pursuant to a resolution adopted at a stockholders' meeting, the entire business and assets of the corporation were sold to Christine Turnblad, and by her transferred to defendant Swan J. Turnblad on February 5, 1901; (3) laches and the statute of limitations.

The issues thus stated were tried, and the court sustained each of defendant's contentions. This is an appeal from an order refusing a new trial.

The undisputed facts are briefly as follows: The Swedish-American Publishing Company was organized in 1885. The organizers were interested in temperance, and intended to publish a Swedish newspaper devoted to the cause. They had little thought of any financial returns. The capital stock was $10,000, divided into shares of ten dollars each. Plaintiff became the owner of six shares in 1886, and still owns them, unless his rights as a stockholder have been lost through forfeiture or abandonment. Defendant Swan J. Turnblad became a stockholder in May, 1886, and subsequently acquired other stock. He was elected a director and vice president in May, 1886, and in October, 1886, manager. He continued to be manager and a director of the corporation up to the time of the alleged sale of the paper in 1897. There is no question that the paper was in debt at the time Turnblad became manager. Assessments were made on the stock in 1889, 1890, and 1891. Many of the stockholders did not pay the assessments, and a good many sold their stock to Turnblad. Plaintiff paid the 1889 and 1890 assessments, but failed to pay the one levied in 1891, and for such failure his stock was declared forfeited.

It must be conceded that, if the alleged sale of October, 1897, was invalid, and plaintiff is still a stockholder in the Swedish-American Publishing Company, and is not barred by laches, he is entitled to an accounting in this action. If, however, the sale of October, 1897, was valid, or if plaintiff is not a stockholder, or has lost his rights by laches, he is not entitled to relief.

The trial court found that the newspaper was running at a loss up to 1897, was worth nothing at that time, that it was sold by the corporation to Mrs. Turnblad in consideration of her payment of one dollar and its debts, and that the sale was made in good faith and was valid. We have carefully considered the evidence on this branch of the case, and reach the conclusion that the finding is so against the weight of the evidence that it cannot be sustained.

The whole question is whether the sale, presuming it to have been

made, was made in good faith, or was part of a scheme of Turnblad to get for himself what belonged to the stockholders. The really decisive question on this branch of the case is as to the financial condition of the corporation at the time of the alleged sale. If it was a losing venture, if the receipts did not equal the expenditures, and the paper had been kept a going concern only by the persistence and money of Turnblad, the good faith of such sale can hardly be questioned. If, on the other hand, the Posten was earning large profits, and this was unknown to plaintiff, the alleged sale fails. Turnblad could not, either personally or through his wife, purchase the property of the corporation, of which he was manager, at a grossly inadequate price. He was a trustee for the stockholders, and bound to account to them for the profits made and to act in the utmost good faith. A sale of the assets of a corporation to its managing officer should be scrutinized carefully, and should be held valid only when the evidence is clear that it was for an adequate consideration and made in good faith.

The greater part of the great mass of the evidence is directed to the condition of the paper up to and at the time of the alleged sale. In view of our conclusion that there ought to be a new trial, it is not advisable to discuss the evidence in detail; but we have examined the evidence as to cost of composition and the other expenses, the evidence as to the circulation and advertising of the Posten, the bank books of the Turnblads and the corporation, the explanations made by Turnblad as to the sources of the wealth that he possessed at this time, the conduct and statements of Turnblad after the sale, and we reach the conclusion that this issue ought to be tried again.

It is urged by defendants with great earnestness that plaintiff is not a stockholder in the corporation, and therefore has no right to relief. This argument is based upon plaintiff's acquiescence in the action of the corporation in declaring his stock forfeited. It is not claimed, as we understand it, that the action of the corporation operated ipso facto to forfeit plaintiff's stock; but the theory is that plaintiff, by his conduct after the action was taken, assented to the forfeiture. In other words, his stock was forfeited by mutual agreement between himself and the corporation. Conceding that a stock-

holder in a corporation may lose his status in this way, we are not able to agree to the view that the facts here justify an application of the legal principle.

While plaintiff took little or no interest in the affairs of the corporation, while he delayed long before asserting his rights, and while there is evidence of actions on his part that may be construed as indicating his belief that he had none, this conduct may well be explained by the fact that plaintiff believed the paper was running at a loss, and that his stock was of little or no value. This belief was induced by the representations of Turnblad. There were dealings after the alleged forfeiture which tend to show that neither plaintiff nor Turnblad considered that plaintiff had lost his rights as a stockholder. Certainly the evidence of abandonment should be very clear to justify the conclusion that a stockholder in a corporation has ceased to be such, when there has been no sale of his stock and no express agreement on his part. We think the evidence in the record does not justify the decision that plaintiff has ceased to be a stockholder in the defendant corporation.

In determining the question of laches, it is necessary to consider, not only the lapse of time, but the relations of the parties to each other, their conduct throughout, and particularly plaintiff's knowledge or want of knowledge of the actual situation. Had plaintiff known, not only of the sale, but the value of the property sold, it could reasonably be held that he was guilty of laches, and that he had acquiesced; but conceding that plaintiff might have discovered, or that he actually knew, that Turnblad assumed to own the Posten, if he did not know the facts relating to its financial condition, especially if this ignorance was due to representations of Turnblad, his delay in bringing suit is excusable. Certainly he cannot be charged with knowledge of the real facts in this regard, when with all the energy of counsel it is not yet finally determined what those facts are.

The decision of the learned trial court that plaintiff was barred by laches was almost necessarily influenced by its conclusion that the sale was made in good faith. If this conclusion was wrong, the evidence on the question of laches must be viewed in a different

light. Where a relation of trust and confidence exists between the parties, and the trustee is guilty of fraud or breach of duty, the evidence should be very strong to permit the guilty party to escape on the plea that the person defrauded and to whom the trustee owes the duty of acting in the utmost good faith, without concealment of the truth, had delayed demanding his rights.

We conclude that the decision of the trial court that plaintiff is barred by laches is not sustained by the evidence. We are of opinion that justice to both parties requires that there be a new trial.

Order reversed, and new trial granted.

SIMPSON, J. (dissenting).

I am unable to concur in the opinion that the evidence submitted upon the trial of this case does not sustain the findings of the trial court upon any of the three stated decisive issues in the case. I am convinced, from an examination of the evidence, that, if any facts are established by the mass of testimony received, it is established that the defendant corporation was, from 1886 up to and for some time after 1891, in debt; that the success of its publishing enterprise was problematical; that the plaintiff, from 1886 up to the levy of the assessment of 1891, was a stockholder and actively participated in the business of the corporation; that he knew its actual condition; that he refused and failed to pay the assessment of 1891, because he did not desire to remain longer a stockholder in the corporation; that after his stock was declared forfeited, he acquiesced in such forfeiture and abandoned his rights as a stockholder; that he did not thereafter assume to be a stockholder in said company during a period of about seventeen years; that he was never thereafter recognized or treated as a stockholder by the managing officers of the corporation.

Further, I am of the opinion that these established facts fully sustain and warrant the finding of the trial court that plaintiff has lost the right to assert that he is now, and has ever since 1891 been, a stockholder in said corporation, and to question the validity of the sale of the paper in 1897.

It is unnecessary to state the principles frequently announced

governing the determination by this court of the question of the sufficiency of evidence to sustain the findings of the trial court. The evidence was conflicting. Industrious counsel have pointed out inconsistencies and contradictions in the testimony of most of the witnesses in the case. The determination of the weight of such testimony, and the inferences to be drawn therefrom, are, for substantial reasons, committed primarily to the trial judge.

The evidence thus appearing to me to sustain, within the applicable rule, the findings of the trial court referred to, I am of the opinion that the order denying a new trial should be affirmed.