HOLCOMB & HOKE MANUFACTURING COMPANY AND ANOTHER v. R. F. OSTERBERG.[1]

November 28, 1930.

No. 28,138.

*Constant Larson,* for appellants.
*R. S. Thornton,* for respondent.

[1]Reported in 233 N. W. 302.

LORING, J.

In a suit upon a note given for a popcorn and peanut machine, the defendant had a verdict upon the theory of rescission of the sale. This is an appeal from an order denying plaintiffs' alternative motion for judgment notwithstanding the verdict or a new trial.

The defendant on January 12, 1927, bought from the plaintiff manufacturing company, hereinafter called the company, a combination corn popping and peanut roasting machine for use in connection with his restaurant business.

The contract of purchase was in writing signed by both parties, the company signing by its salesman. It provided that:

"It is not subject to countermand, and is not subject to any conditions whatsoever unless such conditions are set forth herein, * * *. No agreement, representation, or claim of any kind shall be binding or of any force unless herein contained."

The defendant however refused to make the purchase or sign the contract until the salesman wrote on a duplicate blank which was left with defendant a "guarantee" in the following form:

"Guarantee to Customer: We guarantee every Butter-Kist Popcorn Machine and Peanut Machine to be free from defects and to perform the work for which it was designed and sold. Holcomb & Hoke Mfg. Co. by H. J. Vollmer."

The blank on which this was written was not otherwise signed nor was it filled out in other respects, but as to printed matter was identical with the original contract transmitted to the company as an order.

The machine was received by defendant about January 20, 1927, and was immediately set up and operated by him. It did not perform the work of buttering the popcorn nor properly separate the unpopped kernels before buttering; neither did it roast peanuts according to defendant's expectations. The nickeled parts on the machine were dull, and there was a board in the bottom part which caused the defendant to suspect that the machine was not new but rebuilt.

The defendant began to complain about the machine's being rebuilt and evidently made such complaint to Vollmer, because the company wrote the defendant in January assuring him that the machine was not rebuilt and explaining that the nickeled parts were covered with a rust-proof dressing and giving him instructions about removing it. It also offered the services of its service department. Later in the correspondence the company offered to replace the parts to which defendant objected. On February 1, 1927, the defendant wrote the company stating that the machine was "not as it should be" and specifying that there were parts "that show they are not of new material" and that the "flasher" light on top did not work.

The defendant claims that the faults in the operation of the machine developed at once upon its receipt and that within a month he realized that he could not overcome them. He states that before he wrote the company on February 1 he told Vollmer "what the matter was with the machine." Defendant's letters subsequent to February 1 were not offered in evidence, but the company's letters offered by defendant indicate that until April 23 the subject of the correspondence was the question of whether or not the machine was rebuilt. There is no discussion of its failure to operate. In the first part of April Vollmer came to the defendant for the purpose of collecting the note the defendant had given as part of the purchase price. At that time defendant told Vollmer: "You can take your machine because I will never pay for it unless they sue me for it and I have to pay it."

Defendant however conferred with a firm of lawyers and on April 23 caused them to write a letter to the company in which the defects now complained of were enumerated, and the defendant's claim that the machine was not a new one was reiterated. They then said:

"It is for the foregoing reasons that they have not made any further payments and unless you can make this machine fulfil its guarantee and work satisfactorily as your contract provides they refuse to make any further payments * * *. We might also add that in no event will this machine be accepted if it is established that it is a rebuilt machine."

To this letter the company replied, giving instructions how to operate the machine and again assuring defendant's attorneys that the machine was new when sold to defendant. Nothing further transpired in the relations between the parties. The defendant kept the machine and did not renew his effort to rescind until in January, 1928, this suit was brought to recover on his note. He then interposed an answer which was subsequently amended so that it set up a rescission of the contract of purchase by defendant and asked for damages in the amount of the purchase price. The case was tried to a jury, which returned a verdict for the defendant. The court denied the plaintiffs' alternative motion, and they have appealed, amongst other matters assigning error upon the court's action in submitting to the jury the questions of rescission and the timeliness thereof.

We are squarely confronted with the question of the sufficiency of defendant's claimed rescission in early April and the effect thereon of the letter of April 23. It should be here remarked that upon the trial the court did not submit to the jury the question as to whether or not the machine was a rebuilt one. In this we are of the opinion that the court was correct. There was not sufficient evidence that the machine was rebuilt to make a question of fact.

In discussing the question of the defendant's alleged rescission we shall approach it from the standpoint of the effect of the letter of April 23 upon the conversation which the defendant had had with Vollmer, assuming for the present but not deciding that an offer of the character defendant described was as effective as if made directly to the company. The conversation as related by defendant was an unqualified demand that the company take back the machine, but before the demand was acted upon and before many days had passed the defendant's legal representatives (not his present counsel) wrote the letter of April 23 which stated defendant's position as being that of unwillingness to pay "unless you can make this machine fulfil its guarantee and work satisfactorily as your contract provides." In effect it was a demand to put the machine in condition to fulfil the warranty, and consequently it was

inconsistent with and an abandonment of the previous attempt to rescind. In our opinion it superseded and nullified any offer to turn back the machine. It indicated a purpose to refuse to accept only in case it was established that the machine was rebuilt. This last matter is now outside the issues because it was not established to be a rebuilt machine, and the trial court so held. Therefore the letter for our present purposes can be construed as if that clause had been omitted. Without it the letter amounts to a request to make the warranty good, not an attempt to rescind. As before stated herein, the company replied to this letter with instructions about how to adjust and operate the machine. After this nothing further was done by defendant looking toward a rescission until this suit was brought and his answer was interposed in January of 1928.

On the trial of the action the defendant relied upon the conversation of early April as a rescission, and the trial court submitted the case to the jury upon the question as to whether or not this conversation amounted to a rescission. In the light of the letter of April 23 this was error. That disposes of the defendant's claim to a rescission in April. Was his answer a rescission and, if so, was it timely?

We are of the opinion that it was not timely. The uniform sales act provides in G. S. 1923 (2 Mason, 1927) § 8443, that the buyer must "notify the seller within a reasonable time of the election to rescind." This was the rule prior to the statute. In 2 Black, Rescission and Cancellation, § 536, the author has selected in a comprehensive note the latest and most important from the multitude of cases which support this doctrine of the necessity of reasonable promptness in making a rescission. In commenting thereon in the text he says:

"The true doctrine is that, after discovering the facts justifying rescission, the party is entitled to a reasonable time in which to decide upon the course he will take. But this does not mean that he will be indulged in a vacillating or hesitating course of conduct, but that he must act with such a measure of promptness as can

fairly be called 'reasonable' with reference to all the circumstances of the particular case."

The reasonable time begins to run from the time of discovery of the facts on which the right to rescission is based. 2 Black, Rescission and Cancellation, § 538.

In the case at bar this discovery was made not more than a month after the receipt of the machine. From this time the reasonable time for defendant to rescind would begin to run unless he was led by promises or other inducement from the company to delay the exercise of the right. Had he adhered to his intention as announced to Vollmer early in April he might have been held to be within a reasonable time owing to the peculiar circumstances of the case. But when he consulted a firm of lawyers of high standing and instructed them to write the letter of April 23 without any inducement from the company to reconsider his course, he deliberately abandoned his efforts at rescission and never resumed them until he put in his answer in January, 1928, 11 months after he admits discovery of the defects and discovery of his inability to remedy them by change in method of operation. We can find no case in the books where in such a case indulgence has been extended so far as to allow the assertion of the right of rescission so long after discovery of the right.

In commenting on rescission of sales of personal property Black in § 542 of the work above cited says:

"It is of course impossible to fix an absolute limit of time within which such action must be taken, as each case must be governed by its own circumstances. But from an examination of the authorities it would appear that thirty days is about the utmost length of time which the courts are disposed to allow to the purchaser for this purpose, unless there are unusual circumstances in the case excusing a longer delay. At any rate, periods of time ranging from one month to a year have been held too great to save the party attempting to rescind from the imputation of laches, while, on the other hand, purchasers who have rescinded within periods extend-

ing from one day to thirty days have been held to have acted with reasonable promptness."

We do not attempt to fix any arbitrary limit, but the right of rescission must be exercised with reasonable promptness.

In the case of Kelsey v. Ringrose Net Co. 152 Wis. 499, 140 N. W. 66, the supreme court of Wisconsin had before it an attempted rescission of a sale of a machine made especially to fasten tips on horse nets. The machine was impliedly warranted to do the work for which it was designed, but at no time was the purchaser able to make it do satisfactory work. The machine was rebuilt by the vendor, and the purchaser again attempted to make it work and, not being able to do so, attempted to rescind and recover the purchase price after a second trial of 47 days. The trial judge held that the purchaser was guilty of laches as a matter of law and was sustained by the supreme court. The court said that failure to rescind with reasonable promptness will defeat the right of rescission.

Moreover, "it is also a general principle that a person who knows that he is entitled to rescind a contract cannot wait until suit is brought for payment or other enforcement of the contract and then set up his grounds of rescission, or at least, such a course is regarded with great disfavor by the courts if there has been any considerable lapse of time since his discovery of the facts." 2 Black, Rescission and Cancellation, § 541; Fratt v. Fiske, 17 Cal. 380-385.

We are of the opinion that such procedure cannot operate to extend the reasonable time within which a rescission must be sought.

We are constrained to hold that the lapse of time from the discovery by defendant of the machine's defects until he set up a rescission was laches as a matter of law. It appears however that the defendant may have a cause of action or counterclaim for damages upon appropriate amendment of his pleadings. Zimmerman v. Robinson & Co. 128 Iowa, 72, 102 N. W. 814, 5 Ann. Cas. 960; In re Van Norman, 41 Minn. 494, 43 N. W. 334. Such amendment is within the discretion of the trial court. It is therefore not a case for judgment notwithstanding the verdict.

The order denying a new trial is reversed.