## LAUNDRY SERVICE COMPANY v. FIDELITY LAUNDRY MACHINERY & ENGINEERING COMPANY, INC.[1]

October 21, 1932.

No. 28,983.

*Louis Sachs,* for appellant.

*Meshbesher & Anderson,* for respondent.

[1]Reported in 245 N. W. 36.

HILTON, J.

Plaintiff is engaged in the general laundry and dry-cleaning business. Defendant is a corporation engaged in the manufacture of equipment for use in such business. Both parties are located in Minneapolis.

Prior to January, 1929, plaintiff had purchased certain equipment from defendant and was operating the same in January, 1929. In that month plaintiff purchased from defendant a Unipress machine. It was for use in pressing the bosom, body, and neck band of shirts. This machine was shortly thereafter installed in plaintiff's place of business. The sale was on open account; no payments were made thereon prior to May 2, 1929, when a conditional sales contract was entered into covering that machine, by the terms of which $225 was credited plaintiff for old equipment taken back by defendant as part payment, and plaintiff promised to pay the balance of the purchase price in eleven $50 monthly payments and one $25 payment, with six per cent interest on deferred payments. The purchase price of the machine was $800. Six consecutive payments were made.

On May 29, 1929, plaintiff placed an order with defendant for the purchase of three similar press machines and other equipment. These new machines were installed in plaintiff's plant about June 29, 1929. The purchase price thereof was $1,683.

The complaint in general alleged the making of the purchases; breaches of warranty; failure of the machines to work satisfactorily, and that on or about December 17, 1929, a tender and offer to return the machines and equipment and a demand for the return of the money paid was made by plaintiff; that defendant refused to accept delivery and refused to return to the plaintiff the amount paid; that it was holding said machines and equipment for the benefit of the defendant and asked for judgment for $525 and interest. Defendant by proper answer controverted the salient paragraphs of the complaint and as a counterclaim asked for judgment for $2,133 and interest, being the claimed unpaid balance of the purchase price for the four machines. A general denial was made by reply. The case was tried to a jury and evidence introduced

by both parties. At the close of the trial, upon motion, the court directed the jury to return a verdict in favor of defendant for $1,683 and interest, the purchase price for the three machines which were installed in June, 1929. From an order denying the motion for a new trial, predicated on the ground that the directed verdict was not justified by the evidence and that it was contrary to law, this appeal was taken.

The court in granting the motion for a directed verdict among other things stated:

"There can be no question in the court's mind, so far as the first machine is concerned, that there was a ratification on the part of the plaintiff."

This statement was amply justified by the evidence. The trial court then expressed the opinion that the first machine was entirely out of the case and found in defendant's favor for the purchase price of the last three machines, thus preserving to defendant all its rights under the conditional sales contract. The court correctly stated that the testimony was unsatisfactory in regard to an express agreement and that there was nothing more than the usual implied warranty that a machine which is sold is such that it will do the work that is claimed for it or that it is manufactured to do.

G. S. 1923 (2 Mason, 1927) §§ 8423 and 8443(3), provides:

"8423. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

"8443(3). Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, * * *."

The rule of law relative to rescission is not in dispute. A rescission must be made within a reasonable time when all the facts and circumstances are taken into consideration. The right to rescind must be exercised promptly upon discovery of the facts justifying it or it is waived. 5 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 8606, 8607, and cases cited; Stewart v. B. R. Menzel & Co. 181 Minn. 347, 232 N. W. 522; Holcomb & Hoke Mfg. Co. v. Osterberg, 181 Minn. 547, 233 N. W. 302, 72 A. L. R. 722; Butler Mfg. Co. v. Elliott & Cox, 211 Iowa, 1068, 233 N. W. 669; Advance-Rumely Th. Co. v. Wharton, 211 Iowa, 264, 233 N. W. 673, 77 A. L. R. 1153; 2 Black, Rescission & Cancellation (2 ed.) §§ 536, 542.

The evidence discloses that the first machine was purchased in January, 1929, and used continually from that time on, with a few alterations, until December, 1929; that notwithstanding plaintiff's claim that the machine was unsatisfactory and that it made complaints soon after purchasing it, nevertheless in May, 1929, plaintiff executed a conditional sales contract for the machine and in that month entered into another contract for the purchase of three other machines of the same general character as the first one, which were installed in June, 1929. There were some complaints made relative to all of the machines, but they appear not to have been of a very serious nature. In October, 1929, plaintiff wrote defendant stating that the machines were not perfect articles, specifying some particulars. Defendant was not at that time asked to take the machines back then; but on the contrary it was stated in the letter that the machines could remain for a further time. They so remained and were used.

The first real attempt at rescission was in the middle of November, more than four and one-half months after the machines were installed, although plaintiff testified that it observed the nature of the work and character of the machines shortly after they were installed. In addition, it is to be noted that even after the attempted rescission they were in use up to about the time they were dismantled and tendered to defendant (about December 17, 1929). As to the effect of this use see Butler Mfg. Co. v. Elliott & Cox, 211 Iowa, 1068, 233 N. W. 669.

184

Upon the facts the court concluded, and we think correctly, that a rescission was not made within a reasonable time; that there was a waiver of plaintiff's rights; that it had slept upon its rights. Whether the purchaser exercises his right to rescind within a reasonable time is usually a question of fact for the jury. Laganas Shoe Mfg. Co. v. Sharood, 173 Minn. 535, 217 N. W. 941. But conditions may exist that make the question one of law. Stewart v. B. R. Menzel & Co. 181 Minn. 347, 232 N. W. 522; 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8607. We think it was one of law in this case. Had the case gone to the jury and a verdict been returned for plaintiff, it would have been the duty of the trial court to set it aside. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9764, and cases cited; Manos v. St. Paul City Ry. Co. 173 Minn. 402, 217 N. W. 377.

This is not a case where plaintiff was led by promises or other inducements to delay the exercise of the right. A careful examination of the evidence convinces us that the acts of defendant in servicing the machines from time to time were only such as would ordinarily occur and be required, and were not such as to extend plaintiff's time in which to rescind.

The order denying the motion for a new trial was proper.

Order affirmed.

WILSON, C. J. (dissenting).

It is true that the law requires a rescission to be made within a reasonable time. The question of reasonable time is usually one of fact. The surrounding circumstances and undisputed facts must be analyzed. Here the important and material period of time is from June 29 to November 13. During this period there were continual complaints from the buyer to the seller, who frequently sent its representatives to the buyer to make adjustments on the equipment.

In October the buyer showed indulgence to the seller, permitting the latter to leave the machines in place until after a laundrymen's convention to be held in Minneapolis in October. This was to the interest of the seller. The buyer's position during the period mentioned was unsatisfactory. It was using the machines. It needed

them. It was watchfully waiting for the seller to make good on its promises to make the machines work satisfactorily. The buyer could not throw the machines out until it bought others for installation. The trial court emphasized the fact that the buyer was continually using the machines. What else could it do? It would naturally be reluctant to buy others if defendant could and would cause these machines to do satisfactory work. To be hasty in throwing them out would probably precipitate litigation, and it seems to me that the plaintiff was doing the practical and wise thing in affording every opportunity to the seller to make the machines work, and if so, it was mutually beneficial. Any other course meant litigation. The buyer had reason to believe that the seller would do what it said it would. It was apparently trying to remedy the machines. The buyer should not have been held to have lost its right to rescind while standing by affording the seller opportunity to make necessary adjustments. In fact a seller who has been afforded such an opportunity should not be heard to claim that the buyer had not rescinded within a reasonable time.

The testimony is that the seller's Mr. Parker was in plaintiff's place of business almost daily to "see how we were getting along." Its Mr. Wilhelm promised that if the presses were not satisfactory he would take them back. He told the buyer he would "see to it that that was taken care of." He "started sending his engineers up to our laundry. Mr. Raynolds was up there several times, another gentleman, I don't know his name, who is supposed to be one of the engineers, was up to our plant several times, and they would spend there considerable time studying the machines and watching the operations to see what improvements could be made." Parker promised to replace the machines with newer models if necessary.

I am of the opinion that it was for the jury to pass upon the evidence and determine whether or not the buyer was lulled into delay by the seller's conduct. It seems to me that the question before us must be determined upon the evidence submitted in favor of the buyer and that it is not for us to decide from the evi-

dence "that the acts of defendant [the seller] in servicing the machines from time to time were only such as would ordinarily occur and be required, and were not such as to extend plaintiff's time in which to rescind."

STONE, J. (dissenting).

I think that under the circumstances of this case the question of reasonable time was for the jury.