## MYLES H. JOHNS v. WALTER H. McGENTY.[1]

May 31, 1946.

No. 34,162.

*William E. Tracy,* for appellant.

*Holmes, Mayall, Reavill & Neimeyer,* for respondent.

MAGNEY, JUSTICE.

In an action for the rescission of a contract for the purchase of a radio station, the court found for plaintiff. Defendant appeals from the judgment.

[1]Reported in 23 N. W. (2d) 289.

Defendant was the owner of radio station WJMC located at Rice Lake, Wisconsin. On August 6, 1943, he and plaintiff entered into a written contract for the purchase and sale of the station. Plaintiff agreed to pay $22,500 to defendant, plus $1,000 to S. P. Rigler, a Rice Lake attorney, as compensation for the latter's services in connection with the deal. By the terms of the agreement, the sale was contingent upon authority for such transfer being granted by the Federal Communications Commission. Prior to the signing of the agreement, plaintiff paid $2,350 to Rigler, to be held in escrow by him, subject to performance and the completion of the purchase and sale. Plaintiff agreed to cause an application to be filed with the Federal Communications Commission within 60 days. Other provisions of the contract are of no importance in this controversy.

Plaintiff asks rescission of the contract on the ground that several false representations were made by the seller as to past earnings of the station and as to its contracts with advertisers and others. The court found that such misrepresentations were made, that they were made with intent to deceive plaintiff and to induce him to enter into the contract, and that plaintiff, believing the representations were true and relying thereon, entered into the contract. It further found that such false representations and fraud were not waived by plaintiff.

Defendant sets out several assignments of error, which he summarizes in two propositions. In neither does he contend that the court was not warranted on the evidence in finding that the contract was entered into by plaintiff as a result of false and fraudulent representations made by defendant with intent to deceive, and that, in reliance upon their truth, plaintiff signed the contract.

■ Defendant first questions the ruling of the court in permitting plaintiff to give testimony as to what the federal law and rules of the Federal Communications Commission are with reference to the requirements of such law and regulations pertaining to the transfer of radio station licenses. On direct examination, plaintiff

stated that defendant had not sent the copy of the deed to the land. Counsel for defendant interrupted the examination as follows:

"Mr. Tracy: Well, what did you need a deed for?

"A. In the FCC form it asks for that.

"Mr. Tracy: Is there anything in the contract that provides for him [defendant] furnishing you with a deed?

"A. It is federal law.

　　　　*　　*　　*　　*　　*

"Q. It is necessary in order to get a license?

"A. It is necessary to do it to get the license.

"Mr. Tracy: I object to this witness testifying as to what the law is.

"The Court: Overruled. * * *"

The testimony to which defendant makes objection was thus given in answer to questions asked by defendant's counsel. There was no motion to strike. In his motion for a new trial defendant did not specify this alleged error. It is apparent that there is no basis on which to predicate error.

■■■ Defendant's second question is "whether the plaintiff waived the fraud practiced upon him at the time defendant's representatives presented to the plaintiff the operating statement of the radio station which has been referred to herein as Plaintiff's Exhibit B." Waiver or estoppel was not pleaded as a defense in defendant's answer, and the claim first appears after both parties had rested, when defendant moved to amend his answer by setting it up. The court did not formally rule on this motion, but found, as stated, that the false representations and fraud were not waived by plaintiff.

Plaintiff's exhibit B was a typed financial or operating statement of the radio station for the year 1942, submitted to plaintiff on August 5, 1943, the day before the signing of the contract. It bore the signature of defendant. It showed total receipts of $24,439.12, total expenses, set out in detail, of $11,230.18, indicating a gross profit of $13,208.94. After deducting $5,443.97 as payments and undivided profits to defendant and his brother, James J. McGenty,

who operated the station, and depreciation of $1,140.22, it showed a net profit of $6,624.75. It had the appearance of accuracy, and plaintiff was assured that it was a true picture and that it had been signed by the owner. That day it was verbally agreed that plaintiff would buy the station. A contract was drawn up and signed, but later that afternoon was destroyed. The check for $2,350, to be held in escrow, was given on this day. The next day, after a new contract had been signed, plaintiff was informed that the statement (exhibit B) might not be correct because defendant was not a bookkeeper, but that plaintiff would presently be given an accurate statement. He asked for such. He was told that the figures in exhibit B would not appear on their regular books, but that nevertheless the regular books would show an operating profit of between $5,500 and $6,500 for the year 1942; that those figures would be furnished in the very near future; and that those figures would coincide with figures previously filed with the Federal Communications Commission. Defendant also agreed to furnish profit-and-loss or operating statements for every year the station had been in operation and for every month in 1943 up through July, and other figures and documents. When plaintiff signed the contract, he relied on the figures in exhibit B. On August 19, 1943, a new statement was submitted to plaintiff which showed total receipts of $15,759.62 and a net loss of $1,996.50 in operation for the year 1942. Defendant, however, assured plaintiff that there was a profit of $5,500 to $6,500 and that new corrected statements would be submitted. About the middle of October 1943, plaintiff was again assured by defendant that the station had a profit of $5,500 to $6,500 for 1942. On September 22, 1943, plaintiff's Chicago attorneys requested additional time within which to make application to the Federal Communications Commission because certain requested profit-and-loss statements had not been furnished by defendant and there was a misunderstanding relative to a contract which defendant had with the Keystone Broadcasting System which had to be straightened out. All the information required by the federal forms had not been submitted up to that time. The re-

quested extension was granted. At the time the extension was requested defendant still contended that the operation of the station had been profitable in 1942. Up to that time plaintiff had not been definitely advised that the station had actually lost money in 1942. He was awaiting new statements which were not forthcoming. Furthermore, plaintiff discovered that a certain contract which defendant had with the Standard Radio Service had been cancelled as of March 15, 1943, although the company continued to furnish service while it was negotiating to collect $1,565 due it from defendant. The prior statement furnished plaintiff showed total accounts payable of only $702.88.

Some time after October 7, plaintiff told Rigler that he was not going through with the deal, and on October 17 he went to Rice Lake and demanded of Rigler the money which he had deposited in escrow. On November 1, 1943, plaintiff's Chicago attorneys demanded the return of the $2,350 held in escrow.

Defendant claims that plaintiff failed and neglected, within a reasonable time after having been furnished with full, complete, and accurate information in reference to the financial condition and operation of the radio station, to advise defendant of his intention not to proceed with the agreement according to the terms thereof. He also contends that the request by plaintiff for, and his obtaining of, an extension of time within which to file his application with the Federal Communications Commission was an amendment and alteration of the original contract, with the benefit running to plaintiff, and that, because he had full information at that time as to the financial affairs of the radio station, plaintiff waived the original fraud perpetrated on him.

The general rule as to waiver of fraud by unreasonable delay in rescinding a contract after learning of deception is stated in Parsons v. McKinley, 56 Minn. 464, 468, 57 N. W. 1134, as follows:

"It is the duty of a party who has been induced to enter into a contract through fraud to act upon the first opportunity after discovering such fraud, and to rescind the contract by repudiating its

obligations and restoring what has been received under it, if he desires to avail himself of his right to rescind. He is bound to elect what course he will pursue within a reasonable time, at least, after learning of the deception, and is not at liberty to hesitate and delay or wait for a future view of his own convenience, or of the market value of the property, before determining the question of affirmance or rescission."

Restatement, Contracts, § 483, states the rule as follows:

"(1) The power of avoidance for fraud or misrepresentation is lost if after acquiring knowledge thereof the injured party unreasonably delays manifesting to the other party his intention to avoid the transaction.

"(2) In determining the unreasonableness of delay the following circumstances are influential:

"(a) the speculative character of the contract whereby prolongation of the power to affirm or to avoid would give an advantage to the injured party or increase the loss of the other party;

"(b) the likelihood that the party guilty of the fraud or misrepresentation will materially change his position, or the welfare of a third person be unjustly prejudiced by delay;

"(c) the fact that change of position by the party guilty of the fraud or misrepresentation, or prejudice to a third person, has in fact occurred during a period of delay in manifestation of intention."

In *comment a,* on the foregoing rules of law, it is stated:

"* * * the injured party delays giving information of his intention at his peril. He cannot lie by and delay choosing whether avoidance or affirmance will be more profitable, especially if the contract relates to a speculative transaction. On the other hand if there is no circumstance of this sort presented and there has been no change of position or alteration of circumstances, and no likelihood that there will be, a considerable delay does not preclude avoidance."

Plaintiff was bound to elect what course he would pursue within a reasonable time, at least, after learning of the deception. In this case, he learned of the deception immediately after he had signed the contract. Also, the statement of August 19 gave him information on the deception. However, repeated assurances by defendant, some made as late as the early part of October, that the operation of the radio station netted a profit of between $5,000 and $6,500 for the year 1942 and that statements showing this fact would be furnished, have a very material bearing on the question whether plaintiff rescinded within a reasonable time. No such statements were ever furnished up to the time in October when plaintiff notified defendant that he would not go through with the deal. He had a right to continue to expect that the statements would be furnished, and he was awaiting them up to the time of rescission. Under the facts of the case and taking the version most favorable to plaintiff, as we must, we conclude that he acted within a reasonable time. Furthermore, the contract was not of a speculative character, and there is no pleading or proof that there was a likelihood that defendant would or did materially change his position during the period of delay, and no third person was prejudiced.

■ The request by plaintiff for an extension of time within which to file his application with the Federal Communications Commission and the granting of this request by defendant did not waive the original fraud perpetrated by defendant. At the time this request was made and granted, defendant was still giving assurances to plaintiff that statements would be produced which would show an operating profit of the radio station of from $5,500 to $6,500 in 1942. At that time plaintiff did not have full and reliable information with reference to the financial condition of the radio station. At least he was justified in believing that he did not have such full information in view of defendant's continued assurances that further statements would be furnished which would correctly disclose a substantial profit for 1942. Plaintiff was required to furnish correct information to the commission. Furthermore, up to the time the request for extension was made, defendant had failed

to furnish other additional promised information which plaintiff needed to make the application to the Federal Communications Commission. Complications also arose because of misinformation given plaintiff by defendant relative to contracts which defendant had with other concerns. Taking it all in all, it cannot be successfully claimed under the circumstances here that, after discovering the facts, the right of rescission was lost by affirmative action manifesting a willingness to go on with the contract.

Judgment affirmed.