## CARROLL HEMMING AND OTHERS v. ALD, INC., AND ANOTHER.

155 N. W. (2d) 384.

December 22, 1967—No. 40,502.

---

[2] Cf. Caruso v. Caruso, 175 Misc. 290, 23 N. Y. S. (2d) 239; In re Adoption of Walpole, 5 Ill. App. (2d) 362, 125 N. E. (2d) 645.

*George P. Hoke* and *David W. Larson,* for appellants.

*Vennum, Newhall, Ackman & Goetz, Melvin I. Orenstein,* and *John H. Strothman,* for respondents.

PETERSON, JUSTICE.

Respondents purchased automatic laundry and dry-cleaning equipment from appellant Ald, Inc., on July 20, 1962, and rescinded the

purchase agreement on June 25, 1963, on grounds of fraud.[1] Respondents recovered, upon a jury verdict, all sums paid to appellants under the purchase agreement.

Three issues are presented upon appeal from the denial of appellants' post-trial motions for judgment notwithstanding the verdict or for a new trial: (1) Whether, as a matter of law, respondents lost their right to rescind by failure to do so within a reasonable time after discovery of the fraud; (2) whether the trial judge failed adequately to instruct the jury on the fundamental principle of law that failure to rescind within a reasonable time after discovery of the fraud constitutes a waiver of the right to rescind; and (3) whether the trial court committed prejudicial error in refusing to permit appellants to call as rebuttal witnesses two persons whose names had not been included in the pretrial order.

■ A buyer has the right to rescind a sale of goods upon grounds of fraud. That right, however, may be lost where the buyer either affirms the transaction with knowledge of the fraud or, pertinent here, where the buyer fails to disaffirm the transaction within a reasonable time after discovery of the fraud, a result variously based upon principles of waiver, laches, or estoppel.

The determination of what is a "reasonable time" in which to rescind a fraudulent transaction depends, first, upon a determination of when the fraud was in fact discovered and, second, a determination of what

---

[1] Appellant Ald, Inc., was the actual seller of the equipment, and appellant Walter E. Heller & Company is the assignee of Ald's conditional sales contract with respondents. Respondents gave notice of rescission to both appellants. Appellant Heller Co. thereafter instituted a replevin action for repossession of the equipment and a separate action for the foreclosure of the seller's lien. Respondents answered in both actions and subsequently commenced their own action against appellants demanding rescission or, alternatively, damages, alleging fraud, breach of express warranty that the equipment was new, and breach of implied warranty of fitness and merchantability. By agreement among the parties, the equipment was repossessed without prejudice to the rights of any parties; the several actions were then consolidated for trial and, also by agreement, respondents proceeded in the posture of plaintiffs. The jury returned the form of verdict submitted to it for use in the event it found for plaintiffs on the ground of fraud.

may be deemed a reasonable time subsequent to that point of time. The point of discovery is the time at which the buyer has actual knowledge of the nature and extent of the fraud.[2] What is a reasonable time for rescission from and after that point must be determined by the total circumstances of each case and not by mere calendar computation alone.[3] Affirmative acts of ratification will bar the right to rescis-

[2] See, Pott v. Hanson, 109 Minn. 416, 124 N. W. 17; Parsons v. McKinley, 56 Minn. 464, 57 N. W. 1134; Ekberg v. Swedish-American Pub. Co. 114 Minn. 196, 130 N. W. 1029; Johns v. McGenty, 222 Minn. 84, 23 N. W. (2d) 289. This is to that extent distinguishable from remedies for breach of warranty under the Uniform Sales Act, where the buyer was required to act "within a reasonable time after the buyer knows *or ought to know* of such breach." (Italics supplied.) Minn. St. 1961, § 512.49; Truesdale v. Friedman, 270 Minn. 109, 132 N. W. (2d) 854.

[3] Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670. There are cases which superficially seem to decide the issue as a matter of law upon mere time of delay alone; e.g., Heibel v. United States Air Conditioning Corp. 206 Minn. 288, 288 N. W. 393. Most cases appearing to so base decision, however, do so by reference to the existence of other circumstances; e. g., Parsons v. McKinley, 56 Minn. 464, 57 N. W. 1134, which held a 6-month delay unreasonable as a matter of law where the buyer at no time intimated a claim that he had been imposed upon by the seller's fraud, although he had had frequent opportunity so to do; Laundry Serv. Co. v. Fidelity L. M. & E. Co. 187 Minn. 180, 245 N. W. 36, which held a 4½-month delay unreasonable as a matter of law under circumstances where the buyer had by his conduct affirmatively ratified the transaction with knowledge of the defects; Truesdale v. Friedman, 270 Minn. 109, 119, 132 N. W. (2d) 854, 861, which reversed and remanded a case where the claim of fraud was not proved and a claim of breach of warranty had not been raised, noting that "[i]t does not appear that the essential issue of reasonable notice was ever raised, either before or during the trial"; Holcomb & Hoke Mfg. Co. v. Osterberg, 181 Minn. 547, 233 N. W. 302, 72 A. L. R. 722, which held a delay of 1 year unreasonable as a matter of law where the buyer apparently abandoned his earlier demand for rescission upon the grounds of misrepresentation and breach of warranty and asserted his right to rescind for breach of warranty only when the seller brought an action for the purchase price. Our decisions in cases holding or suggesting that delay of only a few months will bar rescission as a matter of law may be contrasted with such other cases as Ekberg v. Swedish-American Pub. Co. 114 Minn. 196, 130 N. W. 1029,

sion regardless of the length of time.[4] But constructive ratification or denial of rescission, whether based upon principles of waiver, estoppel, or laches, requires consideration of such additional factors as the relative knowledgeability of the parties in dealing with the subject matter,[5] the potential prejudice to the seller resulting from delay in rescission as where goods are subject to fluctuating market value,[6] actions or promises of the seller which cause or induce the buyer to delay exercising his right of rescission,[7] and such other circumstances affecting the relative equities of the parties.[8] Although there may be cases in which the delay is so substantial and excuse for delay is so lacking that the right of rescission might be deemed waived or barred as a matter of law,[9] courts are usually reluctant to preclude a defrauded person from his remedy.[10]

---

which held a "long" delay not to be an impediment to rescission where other circumstances justified the delay; Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954, which held a delay of as long as 16 months was not unreasonable as a matter of law; and Federal Motor Truck Sales Corp. v. Shanus, 190 Minn. 5, 250 N. W. 713, which held that a 9-month delay, plus driving a motor vehicle nearly 14,000 miles, was not as a matter of law unreasonable.

[4] Laundry Serv. Co. v. Fidelity L. M. & E. Co. *supra.*

[5] Pott v. Hanson, 109 Minn. 416, 124 N. W. 17; Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954.

[6] Federal Motor Truck Sales Corp. v. Shanus, 190 Minn. 5, 250 N. W. 713; Holcomb & Hoke Mfg. Co. v. Osterberg, 181 Minn. 547, 233 N. W. 302, 72 A. L. R. 722; Johns v. McGenty, 222 Minn. 84, 23 N. W. (2d) 289; Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954; Parsons v. McKinley, 56 Minn. 464, 57 N. W. 1134.

[7] Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670; Heibel v. United States Air Conditioning Corp. 206 Minn. 288, 288 N. W. 393; Laundry Serv. Co. v. Fidelity L. M. & E. Co. 187 Minn. 180, 245 N. W. 36; Holcomb & Hoke Mfg. Co. v. Osterberg, 181 Minn. 547, 233 N. W. 302, 72 A. L. R. 722; Federal Motor Truck Sales Corp. v. Shanus, 190 Minn. 5, 250 N. W. 713; Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954.

[8] See, Restatement, Contracts, § 483; Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954.

[9] Cf. cases cited in footnote 3.

[10] Halloran v. Blue and White Liberty Cab Co. Inc. 253 Minn. 436, 442, footnote 4, 92 N. W. (2d) 794, 798, footnote 4.

We conclude that this issue was, in the circumstances of this case, properly left to the determination of the jury. The evidence viewed favorably to the verdict, briefly stated, supports the jury's implicit finding of fact that respondents did act to rescind within a reasonable time after discovery of fraud. An agent of appellant Ald contacted Paul Hemming, one of the respondents, in February 1962, to interest Hemming in buying Westinghouse automatic laundry and dry-cleaning equipment for use in a laundromat at a location in Bloomington, Minnesota, under lease by Ald. The agent's employment by Ald was terminated after these events; on oral argument, appellants stated that he was discharged. Hemming, as the agent knew, was then operating a gasoline service station and had no experience or knowledge of the laundry and dry-cleaning business. Because Hemming was unable to raise the substantial downpayment required for this purchase, his brother and sister-in-law were persuaded to join with him and his own wife in this venture, the agent having led them to believe that this new venture required no experience and would require only their part-time activity as a source of income supplementary to that earned in their regular vocations. The four respondents executed a purchase agreement on July 20, 1962, and took possession of the leased premises and the equipment on or about September 4, 1962.

The fraud consisted primarily of Ald's representation that all items of the laundry and dry-cleaning equipment were new, whereas a substantial number of the items were in fact used. Although the evidence is in some dispute as to when respondents first learned that the representation was false, there is evidence that they did not learn of it until sometime soon after taking possession of the premises in September 1962. At that time they learned that 10 of the washers were not new; and thereafter they repeatedly demanded of the agent that new equipment be installed or that their purchase money be returned. Ald's agent admitted that the washers were used but just as repeatedly assured respondents that "we'll take care of you." Ald's agent at the same time reassured respondents that all of the other items of equipment were new. When a pipe on one of the hot water heaters broke, shortly thereafter, respondents additionally learned that two water heaters were

used. Ald replaced the heater that had the broken pipe, but did not replace any of the other used equipment. Ald did provide parts and free service for the equipment for some time thereafter. It gave formal written notice to the buyers that free service would be discontinued on and after November 20, 1962, but there is evidence that such service continued for a brief period even after that date.

Respondents learned the full extent of Ald's misrepresentation in March 1963, at which time the contractor who had been employed by Ald to install the equipment disclosed to respondents that the hot water equipment, the washers, the water-softening equipment, the soap dispenser, and the extractor were all used equipment. Respondents then began to look around for an attorney to represent their interests in the transaction. The counsel whom they wanted to represent them was on vacation for several weeks and was not immediately available. Upon his return, he met with respondents and advised them that necessary evidence must be assembled before taking formal action. It was not until June 25, 1963, therefore, that a formal letter of rescission was sent by respondents' counsel to the appellants.

It is appellants' first contention that the period of reasonable time for notice of rescission began to run either from the date when respondents suspected or learned of the fraudulent representation as to newness of the 10 washers or no later than the November 20, 1962, notice of discontinuance of further free service on the equipment, a calendar time computation of as much as 10 months or at least 7 months of delay in giving notice of rescission. Respondents contend that the period should be measured only from March 1963, at which time they learned from the contractor the full extent of the misrepresentation, an elapsed time of not more than 3 or 4 months, and during which period of time they were engaged in locating legal assistance for such purpose.

A jury question existed as to the date when respondents effectively discovered the nature and extent of the fraud committed by Ald, which the jury could fix as March 1963. A jury question even more clearly existed as to the reasonableness of the time that elapsed between their discovery of the fraud, whatever the date, and their acting to rescind

in June 1963. The jury's determination of reasonableness of the delay involved consideration of such factors as the disparity of knowledge and experience between the seller and the buyers; the not unreasonable reliance on repeated assurances of the seller that it would take care of them with respect to the equipment already discovered to have been misrepresented; and the fact that delay pending the availability of their attorney and the assembly of evidence at his direction was in no sense sleeping on their rights or inconsistent with an intention to disaffirm. The hard-goods character of the equipment, much of which was admittedly used and reconditioned once before, was a factor that could be considered in finding the delay not inherently prejudicial to the appellants. We could not on review, considering the totality of these circumstances, hold that the right to rescind was, as a matter of law, lost to a defrauded buyer.

■ Appellants contend, with perhaps greater force, that the trial judge erred in its instructions to the jury on a fundamental principle of law in failing to instruct the jury that whether respondents had by inaction lost their right to rescind was a question the jury should consider and decide.[11] There is no doubt that the defense presented a well-settled and fundamental principle of law about which the jury should be adequately informed if its verdict is to be meaningful.

The issue was adequately raised in appellants' post-trial motion, even though counsel, in calling other matters to the court's attention at the conclusion of the instructions, made no suggestion or objection with respect to this point.[12] The instructions of the court relevant to this issue are as follows:

"If plaintiffs, through the defendant's misrepresentations of concealment of material facts or through a mistake induced by the conduct of

---

[11] "Whether or not buyers waived their right to rescind was *certainly a fact question that should have been submitted to the jury,*" appellants acknowledge, but they argue that "[f]ailure to instruct the jury that waiver of the right to rescind was a question for them to decide caused the sellers prejudice as their main defense was completely ignored in the instructions." (Italics supplied.)

[12] See, Rule 51, Rules of Civil Procedure.

defendants, purchased equipment materially different from what they intended to purchase and believed they were purchasing, they are entitled to rescind the agreement on the discovery of the fraud or mistake. The time for rescission does not run while the seller is trying to remedy the defects. *It is the duty of a buyer who has been induced to enter into a contract through fraud to act upon the first opportunity after discovering such fraud and to rescind the contract by repudiating its obligation and restore what has been received under it. If he desires to avail himself of his right to rescind, he is bound to elect what course he should pursue in a reasonable time, at least after learning of the deception, and is not at liberty to hesitate and delay or wait for a future view at his own convenience,* or the removal of the property *to determine questions of affirmation or rescission.*" [13] (Italics supplied.)

The most that can be said of these instructions is that they were not as explicit as they might have been in stating hornbook law. They were not a misstatement of controlling legal principle. We do not believe that the court's instruction as to the duty of a buyer to take action to rescind after discovery of the fraud; that the buyer is bound to elect a course of action within a reasonable time; and that he has no right to hesitate and delay to determine whether to rescind were meaningless to the jury. If not explicit, the implication both from the context of the instructions as a whole and the thrust of so much of the evidence to which these instructions obviously related, was plain enough. Had counsel wished the instructions to be more explicit, he had but to call it to the attention of the court. We are advised by counsel at oral argument in this court that the parties argued this issue fully to the jury, and, in view of the known ability of experienced counsel, it would be strange if they had not done so. Under the circumstances, we are unable to conclude that the instructions were so prejudicial as to require a new trial. Mr. Chief Justice Knutson wrote in Knutson v. Arrigoni Brothers Co. 275 Minn. 408, 415, 147 N. W. (2d) 561, 566:

---

[13] The italicized language of the instruction is taken almost verbatim from Parsons v. McKinley, 56 Minn. 464, 468, 57 N. W. 1134, one of the cases urged upon the court by appellants as a controlling authority.

"\* \* \* While Rule 51, Rules of Civil Procedure, does permit errors in instructions with respect to fundamental law to be raised on a motion for new trial, it was never intended that experienced counsel could tacitly agree to instructions of the court which omit a theory that might have been submitted had it been requested, and then, after an adverse verdict, seek shelter under the rule for the purpose of gaining another chance at victory. In spite of this rule, we feel that there is some obligation on the part of experienced trial lawyers to assist the court in submitting issues which they believe are involved in the case. \* \* \* [W]here counsel deliberately try a case on one theory or permit it to be submitted to the jury with an omission of one of the issues that ought to be submitted, they will find little sympathy here if they seek a new trial under Rule 51."

■ The trial court would not permit appellants to call witnesses not listed in the pretrial order,[14] in this case witnesses who would testify in rebuttal of testimony to the effect that there were operational difficulties with the equipment and that the subsequent purchaser was attempting to sell the business because he was apparently dissatisfied with the equipment. An employee of respondents, one Marguerite Olson, had testified that during her 4 months of employment the washers "just didn't seem to operate right," "we had an awful lot of trouble with the dry cleaners," and "there would always be two or three machines out of order." On cross-examination of Paul Hemming, counsel for appellants undertook to establish, over respondents' objection, that the subsequent purchaser, one Grudem, was operating the establishment as a business secondary to his "complete job outside" and that "[h]e seems to be doing all right"; but Hemming volunteered, without

---

[14] The court's order was based upon Rule 28 of the Rules of Practice for the Fourth Judicial District, which provides in part: "Witnesses not named or exhibits not identified in the pre-trial statements or during the pre-trial conference shall not be presented at the trial *except to prevent manifest injustice,* unless the need for or identity of such witness or exhibit is ascertained subsequent to the pre-trial conference. In the latter event, opposing counsel and the Court shall be notified immediately." (Italics supplied.)

objection from appellants, that he knew that "this man had a lot of trouble" and that "after we left the laundromat [seller's] men went in there and completely rebuilt all those machines." [15] Thereafter, respondents undertook to establish on cross-examination of Rolin C. Fahrenkrog, an official of appellant Ald, that Grudem had put the business up for sale in March 1965.

Appellants offered to prove, if the excluded witnesses were permitted to testify:

"* * * [T]hese issues; namely, the profitability of the unit and its functioning being two of the major issues in the case, we offer to prove

_____

[15] "Q. [Mr. Hoke, counsel for appellants] Don't you know that the man who succeeded you, isn't it common knowledge and your knowledge that Don Grudem has a complete job outside? He seems to be doing all right.

"Mr. Orenstein [counsel for respondents]: I object to that as hearsay.

"The Witness: Yes.

"Mr. Hoke: I just asked if he knows.

"The Court: Answer may stand.

"The Witness: Yes, I know. And I also know that this man has had a lot of trouble. And I also know that after we left the laundromat their men went in there and completely rebuilt all those machines. I know because the man that did it told me. I even stopped at that laundromat and watched him rebuilding those machines, doing what they should have done before when they told us they had rebuilt them. They didn't rebuild them. They did it after we left. That's why Mr. Grudem didn't have as much trouble as we did. But I know he had trouble because my wife—we still lived fairly close to the laundromat, and my wife went in there many times and washed there. And she knows the trouble they had there.

"By Mr. Hoke:

"Q. Would you deny that he is still operating it successfully and regularly making payments on that? Would you deny that?

"A. I don't deny it. Maybe he is. I don't deny this either, that maybe they got a deal going with him just to say all this stuff. I don't believe it's necessarily the truth. I wouldn't believe the man if he come and told me, 'Everything is going fine, no trouble. I am making a lot of money.' I wouldn't believe it. I wouldn't call him a liar because I would have to have proof, because after all we went through I would have to have everything in black and white and really have proof.

"Mr. Hoke: I have no more questions."

by Mr. Grudem the following: First, that Mr. Grudem's experience has been profitable from the outset; that he has made his payments regularly; that in fact, if he could obtain them at a fair price, he would wish to purchase one or two additional units of the same size in the Twin City area; that whereas he paid $29,000 when he purchased it from ALD, that today he would not accept less than $41,000.

"We offer to prove by the assistant hired by Mr. Grudem, who works an identical shift with that of Mrs. Margaret Olson, first that the machinery, apart from minor maintenance problems, is trouble-free; that there is a growing use of this laundromat equipment in the immediate area; that everything she has learned in connection with her employment by Mr. Grudem has been favorable."

Although we agree with appellants that the trial court was unduly restrictive in excluding the testimony of these witnesses,[16] we conclude that it was error without prejudice. The jury found that appellants had committed a fraud upon respondents—representing used equipment as new equipment. The jury made no finding, accordingly, as to respondents' alternative claim of breach of warranty of fitness and merchantability. The proffered testimony was germane to the latter and not the former. It was, accordingly, not prejudicial to the result reached, so there was no manifest injustice.[17]

Affirmed.

---

[16] As Judge Medina observed in Clark v. Pennsylvania R. Co. (2 Cir.) 328 F. (2d) 591, 594: "* * * [It] is a fundamental principle of pre-trial that this procedure be flexible, with power reserved to the trial judge to amend the order or permit a departure from strict adherence to the pre-trial statements of either party, when the interests of justice make such a course desirable. Otherwise, a pre-trial order or pre-trial statements would hold the parties in a vise, and the result might be just about as bad as a return to the old sporting theory of justice."

[17] Appellants' post-trial motion asserted the error as refusing "to permit Mr. Donald Grudem and Mrs. Judith Kack to testify in refutation of plaintiffs' claim that the purchaser of the [equipment] had similar troubles." In its reply brief, however, appellants argued: "What is involved is the importance of impeachment. * * * It was important to impeach Paul Hemming to let the jury know that he testified falsely regarding the experience of the subse-

quent purchaser but the jury also should have been given an opportunity to conclude that perhaps some of the rest of his testimony was likewise false or exaggerated." Impeachment, of course, must be with respect to a material matter; but, as we have noted, the testimony was not germane to the issue upon which the jury reached its verdict. In so far as it might be deemed relevant to Hemming's general truthfulness as a witness, the record is replete with corroborative testimony of others that the equipment was used and not new; indeed, that fundamental finding is not otherwise challenged in this appeal. There was, therefore, no manifest injustice on this score either.