# FEDERAL MOTOR TRUCK SALES CORPORATION v. L. P. SHANUS.[1]

November 3, 1933.

No. 29,441.

*Clarence T. Lowell,* for appellant.
*Hyman M. Juster,* for respondent.

[1]Reported in 250 N. W. 713.

6

*HOLT, Justice.*

The appeal is by plaintiff from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

Plaintiff's action was to foreclose a conditional sales contract for the sale of a truck by plaintiff to defendant. Defendant by an amended answer alleged that the truck was sold with a warranty of fitness; that there was a breach of the warranty in that the brakes would not and could not be made to function properly, although plaintiff had repeatedly attempted to remedy the defects therein without avail; that on account of failure to make the brakes work properly defendant rescinded the contract and counterclaimed for a return for what he had paid thereon. The jury returned a special verdict to the effect that plaintiff did not inform defendant when it took the truck that it was taken for the purpose of foreclosure, and a general verdict in favor of defendant assessing "his damages in the sum of one hundred dollars, and the company keep both trucks." The jury's reason for not returning larger damages is found in the fact that plaintiff had taken an old truck of defendant's in the deal at perhaps a high valuation. At any rate, more than half of the purchase price had been paid.

There has been more than the usual sparring for positions of supposed advantage in this litigation. Had plaintiff been satisfied with retaking its truck and retaining all it got from defendant there likely would have been no litigation. But plaintiff insists on having its pound of flesh. It desires to foreclose the contract by selling the truck at a sheriff's sale, where no one but itself is likely to bid, and take a deficiency judgment for the balance. Plaintiff seeks to review various orders, such as opening the default judgment and permitting defendant to answer, allowing an amended answer, and transferring the case from the court calendar to the jury calendar. These were all matters within the judicial discretion of the trial court. The record does not disclose any abuse of that discretion in any of the orders made on the subjects mentioned, and no useful purpose would be served by any statement of the showing made as basis for the orders. No harm came to

plaintiff from denial of its motion to strike parts of the amended answer as sham and frivolous, or from not compelling defendant to elect whether to rely on fraud or on breach of warranty, for there was no proof of fraud offered, and the so-called counterclaim for rescission was predicated and submitted solely upon the breach of implied warranty.

One of the contentions of plaintiff is that this was a sale of a truck under its well known name "Federal," and therefore by this provision of the uniform sales act implied warranty is excluded:

"In the case of a contract to sell or a sale of a specified article under its patent or other trade-name, there is no implied warranty as to its fitness for any particular purpose." 2 Mason Minn. St. 1927, § 8390(4).

The evidence would justify a jury in finding that defendant did not buy the truck by or on account of its trade-name, but on account of the representations of plaintiff's salesman as to the quality of the truck for the work defendant had to do with it. Defendant testified that Murray, the salesman, who knew defendant's business, assured defendant that this truck would be the very thing for his business, and defendant relied thereon in making the purchase. The case of Iron F. C. S. Co. v. Brown, 182 Minn. 399, 401, 234 N. W. 685, 686, appears decisive against plaintiff's contention. There it was said:

"We are of the opinion that where the buyer fully informs the seller of his particular needs and the seller undertakes to select or supply an article suitable for the purpose involved, subd. 1 [of § 8390] applies even though the article may be described in the contract of sale by its trade-name."

Section 8390(1) reads:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

When he purchased the truck defendant signed an order therefor, exhibit A, and also a conditional sales contract, exhibit B. The order contained these statements:

"This order is subject to all of the printed conditions following and the truck is sold under the warranty printed on the reverse side of this order. * * * It is understood and agreed that there are no representations or agreements with respect to the goods ordered other than as herein written."

On the reverse or back side of the order are printed purported warranties of the Federal Motor Truck Company of Detroit, Michigan, presumably the manufacturer of the truck, but not signed by it, and it is not stated to be the warranty or contract of plaintiff. The conditional sales contract contains this statement:

"No warranties have been made in reference to said property by the seller to the purchaser unless expressly written hereon at the date of purchase."

There are no warranties written or printed thereon. Do the quoted provisions exclude the existence of the implied warranty of fitness? It would seem that the decision in Bekkevold v. Potts, 173 Minn. 87, 88, 216 N. W. 790, 59 A. L. R. 1164, answers the question in favor of the buyer. There the sales contract stated:

"No warranties have been made * * * by the seller to the buyer unless * * * written hereon."

This is essentially the language of the order and conditional sales contract in this case. From the quoted part of the sales contract in the Bekkevold case the court said [173 Minn. 90]:

"We must conclude that the parties did not intend to exclude the implied warranty which could easily have been done in unmistakable terms had they so chosen."

It cannot be held that the printed matter on the reverse side of the order excludes implied warranty of fitness. It starts out in this manner:

"This is to certify that we, the Federal Motor Truck Co., of Detroit, Mich., warrant the new motor trucks manufactured by us

to be free from defects in material and workmanship, * * *. The foregoing obligation to make good any defective parts returned as herein provided is in lieu of all other warranties expressed or implied, and of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our trucks."

This equivocal recital of what the manufacturer warrants on the back of the order cannot be held to exclude implied warranty in the sale by plaintiff, a dealer, where the final contract executed by both parties to this transaction, the conditional sales contract, contains no reference to any manufacturer's warranty. Moreover, in that connection consideration should be given of § 8390(6), reading:

"An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

Inferring that this plaintiff intended to exclude implied warranties in the sale of this truck when the final transaction, the conditional sales contract, has no provision of that sort, and the only basis upon which to predicate such intention is the printed matter on the back of the preliminary order purporting to be the warranties of the manufacturer and not of plaintiff, would not accord with Iron F. C. S. Co. v. Brown, 182 Minn. 399, 403, 234 N. W. 685, which says:

"The doctrine of implied warranty is to be liberally construed."

Plaintiff relies on Hummer v. Carmalt, 54 App. D. C. 157, 295 F. 978. There the buyer sued the seller for breach of warranty. It does not there appear that the order culminated in a conditional sales contract, and the order contained this statement:

"This agreement constitutes the entire contract between both parties, and there are no understandings, verbal promises, or representations of any kind not printed or written on this sheet. The purchaser acknowledges the receipt of a copy of the above agreement, and has no understandings, verbal or otherwise, differing from it."

On the back, under the heading "Standard Warranty," we find: "Our warranty  *  *  *  is as follows:"

It is true it reads like a manufacturer's warranty, but the seller adopted it by designating it as "Our warranty." The court held that the warranty, followed by the clause, "this warranty being expressly in lieu of all other warranties, expressed or implied," etc., excluded implied warranty. No uniform sales act seems involved in the decision, and the facts are so different from those here met with that it is not of great aid. Implied warranties are for the protection of the buyer, and if the seller desires to exclude the same from the article sold it should be done in direct and plain language and not by printing manufacturer's warranties on the back of a sales order, which the seller does not purport to make his own and which the record fails to show were called to the attention of the purchaser by copy or otherwise.

It must be conceded that a truck or motor vehicle of any sort should be provided with serviceable brakes to make it fit for the purposes for which it is sold. The testimony is ample that the brakes on this truck were defective from the start. It appears that there was difficulty in applying them; that the driver had to pump several times with the foot pedal before they began to take hold; that if the brakes were applied while the truck was turning, either right or left, the wheels would lock and could be released only by backing the truck; that finally it became so difficult to operate that defendant did not dare to drive to the cities or where the traffic was heavy. There is testimony that the truck was repeatedly taken to plaintiff's shop and various attempts made to remedy the defect, with only temporary success. So the jury could scarcely avoid finding that the truck did not conform to the implied warranty of having serviceable brakes.

The final contention is that the rescission was not timely. The rule unquestionably is well settled that to rescind for breach of warranty, express or implied, the buyer must notify the seller of his election and offer to return the goods with promptness after discovering the breach. And 2 Mason Minn. St. 1927, §§ 8422, 8423,

and 8443 (of the uniform sales act) are to the same effect. The first declares that there is an acceptance when "after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them." Section 8423 provides:

"But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within à reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

And § 8443 provides that if the buyer, after accepting the goods, fails to notify the seller within a reasonable time of his election to rescind for breach of warranty, he loses the right so to do. What is a reasonable time is generally a question of fact, depending on the character of the goods and the conduct of the parties after the breach is discovered. It is obvious that if upon notice of the breach the seller promises or undertakes to remedy the defect, the time thus consumed should not be deducted from the time within which the buyer must act. See Langanas Shoe Mfg. Co. v. Sharood, 173 Minn. 535, 217 N. W. 941, and the cases therein cited. In Stewart v. B. R. Menzel & Co. 181 Minn. 347, 232 N. W. 522, it was held as a matter of law on the conceded facts that an unreasonable time expired before there was an election to rescind. The same was the case in Holcomb & Hoke Mfg. Co. v. Osterberg, 181 Minn. 547, 233 N. W. 302, 72 A. L. R. 722, where the court said that from the time of the discovery of the breach of warranty the reasonable time for the buyer to give notice of election to rescind began to run unless he was led by promises or other inducement from the seller to delay the exercise of the right. So was the holding in Laundry Service Co. v. Fidelity L. M. & E. Co. Inc. 187 Minn. 180, 184, 245 N. W. 36, 38, this decision stating:

"This is not a case where plaintiff was led by promises or other inducements to delay the exercise of the right."

In that case, after the attempted rescission the buyer used the machines for some months. In the case at bar defendant testified that he informed plaintiff within two weeks after he got the truck that the brakes did not work; that he took the truck to plaintiff

to remedy the defect sometimes oftener than once a week; that plaintiff assured defendant it could and would make the brakes work properly; that plaintiff's salesman and manager told defendant it was nothing to worry about, that they would fix the brakes for him; that plaintiff changed the lining in the brakes, filed them, bored holes in the brake bands and plugged the holes with wooden pegs, changed the pistons, and repeatedly "bled" the brakes without being able to make them work. There is nothing disputing the testimony that plaintiff worked many times on the brakes, but there is some claim that the only defect was that the brakes "squealed" when applied. The plaintiff had taken possession of the truck, but there was no evidence whether its braking system worked or not after it obtained possession. While there is not much testimony to dispute defendant's, there are certain matters that cast suspicion thereon. The braking system on a truck, we take it, could be readily detached if faulty and replaced with one without defect. And one would suppose that a dealer and a manufacturer of repute would so replace a defective braking system rather than make repeated and unsuccessful experiments at repairs. Another thing is that during the nine months defendant had the truck it was driven nearly 14,000 miles. But those matters were for the jury. The trial court has approved the verdict, and we should not disturb it.

Plaintiff also claims that notice of election to rescind did not come until the amended answer was served. We think the jury could find it was given a few days before plaintiff retook the truck. Of the irregularity in the verdict plaintiff seems to have made no complaint to the trial court, and it is difficult to see wherein plaintiff is prejudiced by being allowed to retain the truck defendant traded in, and only $100 of the $445.76 paid in cash therefor returned to defendant.

The order is affirmed.