## ASBESTOS PRODUCTS INC. v.
## RYAN LANDSCAPE SUPPLY COMPANY.

163 N. W. (2d) 767.

December 20, 1968—No. 41022.

*Firestone, Fink, Krawetz, Miley, Maas & Noonan,* for appellant.
*Lewis L. Anderson,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

This is an appeal from orders of the district court denying defendant's motions to amend findings of fact, conclusions of law, and order for judgment, or, in the alternative, for a new trial, and also denying motion to join a third-party defendant.

It appears that defendant, Ryan Landscape Supply Company, was awarded a contract by the village of Maplewood pursuant to which it was to install a liner or filter blanket on the slopes of a ditch and surrounding area which carried water from the Minnesota Mining complex located in the village.

One of the products sold by plaintiff, Asbestos Products Inc., was Ultracheck, a fiberglass material which resembles a blanket in form and is attached to the soil through the use of pins. It is designed to prevent erosion and is commonly used on extremely steep slopes where it is difficult to grow grass. The village engineer provided the president of plaintiff company with a picture of the area to be improved and the estimated water flowage into the area. This information was given to plaintiff so that it could determine whether or not Ultracheck could be used to prevent erosion. The material submitted by the village engineer was sent to the manufacturer, the Guston-Bacon Company, for their appraisal as to the desirability of utilizing Ultracheck on this particular project. The manufacturer advised against its use, and this information was conveyed to the village engineer. Nevertheless, the village engineer decided to use Ultracheck, being of the view that the job was a temporary measure and use of a more expensive material would involve financial difficulties. Accordingly, the village engineer prepared a proposal and included Ultracheck in the specifications.

Defendant company, which is primarily in the business of landscaping site developments, submitted a bid which was accepted by the village. Pursuant to the plans and specifications, defendant ordered 2,500 yards of Ultracheck and 4,000 pins from plaintiff, which were delivered. This suit is brought for the purchase price.

Defendant installed the product without knowledge of plaintiff's recommendation against its use. After the installation of the material, it rained, causing the Ultracheck to wash away. There was no evidence indicating that the product was improperly installed. Thereafter, defendant replaced the Ultracheck with another product at a cost of between $1,500 and $1,700. Payment to defendant for the job included the cost of the Ultracheck. No representations or warranties as to the fitness of the product were made to defendant by plaintiff nor did defendant make any inquiries of plaintiff in that regard.

■ Defendant contends that there was a breach of an implied warranty of fitness for the ordinary uses for which the Ultracheck product was sold, and that this warranty is an obligation of both the manufacturer and the plaintiff representative. In considering this point, it may be observed that an implied warranty is imposed by law and arises independently of the contract.[1] The doctrine of implied warranty is essentially an equitable one favored by this court and should be given effect when it is possible to do so. In applying the rule, however, we must not lose sight of the fact that it originated and is used to promote high standards of business and to discourage sharp dealings. It rests upon the principle that "honesty is the best policy" and contemplates business transactions in which both parties may profit. Kopet v. Klein, 275 Minn. 525, 148 N. W. (2d) 385; Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670; and Iron Fireman Coal Stoker Co. v. Brown, 182 Minn. 399, 234 N. W. 685.

We find nothing in the record which would warrant the application of the law of implied warranty to prevent recovery by the plaintiff. We

---

[1] The portion of Minn. St. 1961, § 512.15, upon which defendant relies, provides as follows: "Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

may assume that if the village had failed to specify a particular brand of soil erosion preventive, the defendant landscaping contractor would have made inquiries as to the best type to use, and if such inquiry had been made of plaintiff company, the contractor would have received the same information which was given to the village. Defendant company made no such inquiries, however, and relied upon the specifications submitted by the user. If there was any misrepresentation to defendant company as to the fitness of Ultracheck, it was made by the village engineer through his specifications. We are of the further view that there is not only an absence of circumstances warranting the existence of an implied warranty but, on the contrary, the facts warrant imputing to defendant the knowledge of the village as to the fitness of the product for the particular use intended. O'Connor v. Chiascione, 130 Conn. 304, 33 A. (2d) 336, 148 A. L. R. 169; Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266; 66 C. J. S., Notice, § 8.

■ After the trial was terminated, and the court by its findings concluded that it would be unfair to hold plaintiff liable under the circumstances, defendant by motion sought to implead the village of Maplewood as a third-party defendant. We agree with the trial court's dismissal of that motion. Defendant was informed as early as November 29, 1962, of plaintiff's recommendations to the village of Maplewood against the use of Ultracheck. Defendant was again informed on March 6, 1964. Suit was not commenced until April 15, 1965, and the trial did not begin until May 31, 1967. There was ample time in which defendant might have asked to continue the suit or delay the trial until the village might be brought in as a party. Our statement in Flowers v. Germann, 211 Minn. 412, 421, 1 N. W. (2d) 424, 429, may be appropriately repeated here:

"* * * But here the action has been tried on its merits. The court has considered and determined all opposing claims of the parties directly involved. We believe it is not for us to erect mere procedural hurdles or barriers to a final determination of all issues presented, so that there may be finality as to the present parties."

Affirmed.