P. McA. DOUGALL v. BROWN BAY BOAT WORKS AND
SALES, INC., AND OTHERS.
EVINRUDE MOTORS, APPELLANT.

178 N. W. (2d) 217.

June 12, 1970—No. 41934.

*Johnson & Sands,* for appellant.

*O. A. Brecke* and *J. Robert Nygren,* for plaintiff respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

MURPHY, JUSTICE.

This action to recover damages growing out of an alleged breach of warranty in the sale of a motorboat was brought by the purchaser, P. McA. Dougall, against the dealer, Jonas Marine and Boat Works, Inc. (formerly Brown Bay Boat Works and Sales, Inc.), and the manufacturer, Evinrude Motors, a division of Outboard Marine Corporation. The trial court awarded judgment against both defendants, and the manufacturer, Evinrude Motors, appeals. The manufacturer contends that the record does not establish a breach of warranty or a valid rescission.

From the record it appears that plaintiff purchased an Evinrude Sport 16 inboard-outboard motorboat from defendant boat works on April 22, 1965. The purchase price was $3,395. After credit for a trade-in boat and payment of $1,400, there remained a balance due of $50. It appears that sometime after the sale transaction was completed on April 22, 1965, and before delivery was made on May 22, 1965, plaintiff was provided with a brochure or owner's manual prepared by the manufacturer. The manual was a 34-page booklet of instructions covering the operation and maintenance of the boat. On the inside of the back cover, the following warranty was printed:

"We warrant, to the original purchaser, each new Evinrude boat for one year and new Evinrude engine of our manufacture for two years, to be free from defects in material and workmanship under normal use and service, our obligation under this

warranty being limited to making good at the factory any part or parts thereof which shall, within the warranty period from date of original purchase, be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties and representations expressed or implied and of all other liabilities in connection with the sale or use of any engine or boat."

According to the testimony of plaintiff, he encountered a great deal of difficulty in the operation of the boat during the summer of 1965. The boat proved to be completely unreliable, frequently failed to start, and stalled at inopportune times stranding the plaintiff in the middle of the lake on four occasions. When it did run, the motor's performance was rough. A power lift, designed to lift the drive mechanism from the water when the boat was docked, occasionally froze midway through its operation. The gas gauge proved to be defective. Plaintiff testified that he managed to operate the boat for only 23 hours' running time during the summer of 1965, and half of that time was devoted to trips to defendant boat works for repair. Plaintiff was never able to operate the boat for more than 1 1/2 hours at a time without problems.

While the dealer contended that the asserted defects were minor and normally incidental to a new craft, nevertheless its records disclose that the boat was towed to the boat works on two occasions and, further, that the boat was serviced at plaintiff's lake home on two other occasions during the summer of 1965. A "Request for Warranty Replacement Parts Or Motor" from the dealer to the manufacturer lists the following information:

"Stern drive stuck in 'up' position, gas gauge read *full* under weigh regardless of amount of gas in tank, motor missed at high speed—points loose in distributor."

The report contains the following information with reference to parts required:

"1 tilt solenoid—we have received, 1 new gauge and gas tank sender from factory—we made 3 service calls to his home and customer brought boat back for other adjustments twice."

The president of defendant boat works testified that company mechanics had worked on the boat and that the work was of a minor tuneup variety. The record indicates that plaintiff repeatedly called defendants' attention to the difficulties he was having with the boat, and while defendants' mechanics did some work on the boat, the defects were not corrected.

The trial court found that plaintiff was unable to use the boat, that it required constant repair, and that it did not meet standards of fitness or merchantability for use as a pleasure craft. The trial court's finding that defendants were notified of the condition of the boat and "failed and refused to repair and put said boat in proper working condition" is supported by the record. Written correspondence, which is part of the record, establishes that the manufacturer had ample notice of the defects complained of. The relationship of the parties with reference to the transaction in the spring of 1966 is not entirely clear from the record. There was talk of plaintiff trading the boat in for a new one, but nothing came of it. Plaintiff did not consider that the allowance on the trade-in proposal by the seller was reasonable. He felt that the amount he would have to pay in addition was far in excess of the negligible benefit he had derived from the previous transaction. It appears that the boat had been stored by plaintiff at the boat works over the winter of 1965-66. Plaintiff never regained possession except for a test run in May 1966. The boat works refused to release the boat until plaintiff had paid a $50 balance on the purchase price. This action was thereafter commenced.

The trial court further found that defendants had warranted the boat to be of good workmanlike quality and that it would be

acceptable and fit for use as a pleasure craft, that there had been a breach of such warranties, and that plaintiff had sustained damages in the amount of $3,395.

■ The first point raised by Evinrude is that the transaction is governed by Minn. St. 1961, § 512.15(4), which provides that where an article is sold under its trade name, there can be no implied warranty as to its fitness for any particular purpose.[1] Our decisions prior to the adoption of the current Uniform Commercial Code favor the view that § 512.15(4) does not necessarily operate effectively to deprive the buyer of the benefits of implied warranties as to fitness and merchantability. Iron Fireman Coal Stoker Co. v. Brown, 182 Minn. 399, 234 N. W. 685; Federal Motor Truck Sales Corp. v. Shanus, 190 Minn. 5, 250 N. W. 713; Bekkevold v. Potts, 173 Minn. 87, 216 N. W. 790, 59 A. L. R. 1164. We find no authority which would indicate that § 512.15(4) would negate the implied warranties of fitness or merchantability in a substantial sale involving motor-powered equipment bearing the name of a well-known manufacturer. On the contrary, § 512.15(2) provides that where goods are bought by description from a seller, whether he be the grower or manufacturer, "there is an implied warranty that the goods shall be of merchantable quality." This warranty of merchantability simply means that the product is reasonably fit for the general purpose for which it is manufactured and sold. 1 Williston, Sales (Rev. ed.) § 243.[2] Other authorities to the effect that the sale of

---

[1] Minn. St. 1961, § 512.15(4), provides: "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

This section was a part of the Uniform Sales Act, which has now been superseded by the Uniform Commercial Code, Minn. St. 336.2—101 to 336.2—725.

[2] See Minnesota Code Comment, 21A M. S. A. p. 273, et seq., with reference to the original provisions of the Uniform Sales Act relating to warranties and the provisions of the current Uniform Commercial Code on this subject.

an article by a trade name does not negate an implied warranty of merchantable quality under the provisions of the Uniform Sales Act relating to sale of goods by description are George v. Willman (Alaska) 379 P. (2d) 103; Henningsen v. Bloomfield Motors, Inc. 32 N. J. 358, 161 A. (2d) 69, 75 A. L. R. (2d) 1; Kohn v. Ball, 36 Tenn. App. 281, 254 S. W. (2d) 755; Pabellon v. Grace Line, Inc. (2 Cir.) 191 F. (2d) 169, certiorari denied, 342 U. S. 893, 72 S. Ct. 201, 96 L. ed. 669. See, also, 17 Dunnell, Dig. (3 ed.) §§ 8570 to 8576.

■ Defendant points to the language contained in the printed warranty which says that it is given "in lieu of all other warranties * * * expressed or implied." Defendant also calls attention to Minn. St. 1961, § 512.71, which provides that, where a liability would arise under a sale by implication of law, "it may be negatived or varied by express agreement or by the course of dealing between the parties." Defendant argues that, by applying this statute to defendant's asserted warranty, which it characterizes as an "express agreement," the purchaser is effectively deprived of any warranties not expressly stated.

The force and effect of the form of warranty used by the seller, which states that it is given "in lieu of all other warranties and representations expressed or implied," has been considered and discussed in a great many cases. Courts have expressed varying views as to this type of disclaimer. Some construe it as not explicitly negating the existence of an implied warranty. Sutter v. St. Clair Motors, Inc. 44 Ill. App. (2d) 318, 194 N. E. (2d) 674; State Farm Mutual Auto. Ins. Co. v. Anderson-Weber, Inc. 252 Iowa 1289, 110 N. W. (2d) 449. Others regard the provision as contrary to public policy. Vandermark v. Ford Motor Co. 61 Cal. (2d) 256, 37 Cal. Rptr. 896, 391 P. (2d) 168; Browne v. Fenestra, Inc. 375 Mich. 566, 134 N. W. (2d) 730. Others would agree with defendant that the "in lieu of" language limits the consumer to the express warranty and precludes a holding of implied warranty. Hall v. Everett Motors, Inc. 340 Mass. 430, 165 N. E. (2d) 107; Rozen v. Chrysler Corp. (Fla.

App.) 142 So. (2d) 735; Payne v. Valley Motor Sales, Inc. 146 W. Va. 1063, 124 S. E. (2d) 622.

This court has been reluctant to give literal application to language found in written warranties which would eliminate from the transaction implied warranties as to fitness and merchantability.[3] In discussing an express warranty in the early case of Baumgartner v. Glesener, 171 Minn. 289, 292, 214 N. W. 27, 28, we said:

"* * * [A]s a general rule, such a warranty excludes one by implication; but since the adoption of the uniform sales act, although an express warranty of quality be given, one not inconsistent with it may also be implied."

In McPeak v. Boker, 236 Minn. 420, 53 N. W. (2d) 130, where the seller's warranty of a boat recited that the boat was "in good physical-mechanical condition but not guaranteed in any way," we said (236 Minn. 422, 53 N. W. [2d] 131): "This court has been consistently strict as to disclaimers purportedly affecting implied warranties." We said also that, to be effective, such disclaimers must be clear and explicit. In Bekkevold v. Potts, 173 Minn. 87, 90, 216 N. W. 790, 791, 59 A. L. R. 1164, 1166, we held that the language, "no warranties have been made * * * by the seller to the buyer unless * * * written hereon," did not operate to exclude implied warranties. In numerous decisions, we

---

[3] It would appear that an implied warranty of fitness for a particular purpose and an implied warranty of merchantability which implies that a product is fit for the ordinary purpose for which it is to be put to use are largely synonymous or coextensive and present no problem as applied to the facts in this case. Annotation, 17 A. L. R. (3d) 1010, 1069, 1074; Annotation, 74 A. L. R. 343; Ryan v. Progressive Grocery Stores, Inc. 255 N. Y. 388, 392, 175 N. E. 105, 106, 74 A. L. R. 339, 341: "There are times * * * when the warranties co-exist, in which event a recovery may be founded upon either. 'Fitness for a particular purpose may be merely the equivalent of merchantability' (Williston, Sales, vol. 1, § 235, and cases there cited)."

have pointed out that an implied warranty is imposed by law for the protection of the buyer and does not depend upon the affirmative intention of the parties. In Iron Fireman Coal Stoker Co. v. Brown, *supra,* and Asbestos Products, Inc. v. Ryan Landscape Supply Co. 282 Minn. 178, 163 N. W. (2d) 767, we pointed out that implied warranty derives from an equitable rule and should be liberally construed, and in Beck v. Spindler, 256 Minn. 543, 558, 99 N. W. (2d) 670, 680, we said:

" 'An implied warranty is not one of the contractual elements of an agreement. It is not one of the essential elements to be stated in the contract nor does its application or effective existence rest or depend upon the affirmative intention of the parties. It is a child of the law. Because of the acts of the parties, it is imposed by the law. It arises independently and outside of the contract. The law annexes it to the contract. It writes it, by implication, into the contract which the parties have made. Its origin and use are to promote high standards in business and to discourage sharp dealings. It rests upon the principle that "honesty is the best policy," and it contemplates business transactions in which both parties may profit. * * * The doctrine of implied warranty should be extended rather than restricted.'

"The doctrine of implied warranty is favored by this court, and such warranties should be given effect when it is possible to do so."

It is of interest to note that Minn. St. 336.2—316, the current provision of the Uniform Commercial Code which deals with the exclusion or modification of warranties in sales transactions, is consistent with the approach adopted by this court in the decisions cited. The pertinent portion of the new statute provides that—

"* * * to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous,

and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." [4]

On the briefs and record before us, we are not obligated to further review the authorities from other jurisdictions. It is sufficient to say that the thrust of our decisions has been to protect the buyer from obscure and inconspicuous disclaimers by giving the buyer the benefit of the implied warranty where it is reasonable to do so.

We are not persuaded here that the warranty found on the back cover of the Evinrude brochure played any part in the transaction giving rise to the sale. There is no evidence that the warranty was delivered to plaintiff at the time of the sale or that he was told that the sale was subject to warranties contained in the manual of instructions. Since disclaimer of the warranty is in the nature of an affirmative defense, it would seem that defendant had the obligation to establish that it was delivered at the time of sale and constituted an integral part of the transaction. We cannot agree that the circumstances surrounding the delivery of the brochure to the purchaser remotely approached the dignity of an express agreement comprehended by Minn. St. 1961, § 512.71.

We accordingly hold that the trial court was correct in determining that there was in fact an implied warranty of merchantability, that defendant company had an obligation to furnish plaintiff with a motor craft that was reasonably fit for the purpose for which it was sold, and that the manufacturer breached its obligation.

---

[4] Uniform Commercial Code Comment, 21A M. S. A. p. 338, states: "This section [§ 336.2-316] is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise."

■ It is next contended by defendant that there was no rescission by the purchaser. Defendant calls attention to § 512.69(3), which provides:

"Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale."

Defendant argues that the purchaser accepted the boat knowing its condition, failed to notify the seller within a reasonable time of his election to rescind, and failed to return or offer to return it.

As in Beck v. Spindler, *supra,* the manufactured product involved in the litigation was in possession of the seller's agent for the purpose of making repairs during most of the time involved in the transaction. There defendants attempted to repair the defects for a long time after being first advised of them. We said (256 Minn. 564, 99 N. W. [2d] 684): "While they were so engaged, the reasonable time within which the buyer could rescind did not run." We think this holding applies here. Under all the circumstances, we are of the view that the question of whether plaintiff waived his right to rescind was a fact question to be decided by the trial court.

Affirmed.