John D. DURFEE, Appellant,

v.

ROD BAXTER IMPORTS, INC., formerly
Horvath Imports, Inc., Respondent,

Saab-Scania of America, Inc.,
Respondent.

No. 46988.

Supreme Court of Minnesota.

Nov. 10, 1977.

Rehearing Denied March 6, 1978.

KELLY, Justice.

Plaintiff appeals from an order[1] of the district court awarding him $600 damages for breach of warranty resulting from defects in his new Saab automobile which defendants failed to correct. Defendant also seeks review of the judgment. We reverse.

On June 15, 1974, plaintiff purchased a Saab automobile at Horvath Motors (Horvath), a Saab dealer in St. Paul to which defendant Rod Baxter Imports, Inc. (Rod Baxter) succeeded. He selected a 1974 Saab Sonett coupe after a test drive and after being told by a salesman of its advantages, including availability of parts. Plaintiff paid $100 down and signed an automobile order slip.

Plaintiff returned 1 week later to pick up the Saab and paid the balance of the total price of $5,651. Within a few blocks of Horvath the seatbelt light and buzzer activated. He returned to Horvath, and the salesman quieted the warning devices. On his renewed journey to his home in Duluth, the knob on the shift lever came off in plaintiff's hand, a rattle developed under the dashboard, and the seatbelt warning system again activated. He called the salesman who informed him he could return immediately for repairs or wait until the 1,000-mile maintenance inspection. Plaintiff decided on the latter course.

On July 16, 1974, plaintiff returned the Saab to Horvath for its 1,000-mile maintenance inspection. In addition to his previous complaints, he complained of the ineffectiveness of the windshield-washer system and the air vents. Plaintiff's difficulties with the Saab did not end after this maintenance inspection. Thereafter, the right muffler became defective and, because parts were unavailable at Horvath,

Courtney, Gruesen & Petersen and Thomas W. Gruesen, Duluth, for appellant.

Oberg & Robins, Wayzata, for Rod Baxter Imports.

Doherty, Rumble & Butler and Bruce E. Hanson and Jeffrey B. Oberman, St. Paul, for Saab-Scania.

1. Plaintiff appeals "from the findings of fact, conclusions of law and order for judgment." Such an order is not appealable. E. g., *Cucchiarella v. Kolodzieg*, 283 Minn. 515, 166 N.W.2d 100 (1969). But the same order also denied plaintiff's motion for a new trial, which is an appealable order, Rules of Civil Appellate Procedure, Rule 103.03(e), and we thus consider plaintiff's appeal proper. See, *State and R. R. & W. H. Comm. v. Rock Island M. T. Co.*, 209 Minn. 105, 114, 295 N.W. 519, 524 (1940); *Kosbau Brothers, Inc. v. Ramy Seed Co.*, 296 Minn. 526, 208 N.W.2d 742 (1973). Defendants have properly sought review of the entered judgment.

plaintiff had to fix it at his own expense. On September 25, 1974, he returned the car to Horvath for repair of the rear-window defroster, a squeal in the brakes, the continuing rattle under the dashboard, and the sticking of the accelerator and the choke. In an effort to solve the problem with the seatbelt warning system, the front passenger seat was removed for repairs, and a used seat was temporarily installed. On November 6, 1974, plaintiff returned the car for the 6,000-mile maintenance inspection. At that time, his complaints included a defective left muffler and center pipes (which were not corrected because of the unavailability of parts), a sticking accelerator, a prolongation of fast idle, and the continuing rattle under the dashboard.

After the 6,000-mile maintenance inspection, in plaintiff's opinion, "the problems became more pronounced." The seatbelt warning system continued to activate without apparent cause, the engine in one instance continued to run after the key was removed, and the car stalled on numerous occasions. Plaintiff had the car towed to a Saab dealer in Duluth in early December and did not receive the car until January 1975. The Saab was again towed to the Duluth dealer in late February, where it was worked on and road tested by the Saab district service manager. The car was picked up March 6, 1975, and it stalled five times within a short distance of the dealership, the engine temperature gauge indicated "hot," and finally it stalled again and would not restart. On March 17, plaintiff picked up the car from the Duluth dealer, and it again stalled several times. Upon being informed of this, the Duluth Saab dealer told plaintiff it preferred to have Rod Baxter work on the car.

In a letter dated March 18, 1975, plaintiff informed counsel for defendant Saab-Scania of America, Inc. (Saab-Scania), the distributor of Saabs in the United States, that he would not submit the Saab for further repairs and listed six defects in the car: (1) the passenger seat had not been reinstalled; (2) the automobile continued to stall; (3) the seatbelt warning system continued to activate without apparent cause; (4) the "ungodly" rattle persisted; (5) the temperature gauge registered "hot"; and (6) shortly after starting the motor, the heating unit malfunctioned. Plaintiff has not driven the car since writing the letter and has kept it in a garage. Plaintiff testified he had driven the Saab for 6,300 miles in a conservative manner. The only damage to the car is to the radio aerial which was broken off by vandals.

Plaintiff commenced the instant action against Rod Baxter and Saab-Scania on December 12, 1974. The matter was tried before the court sitting without a jury on February 5, 1976. The court found for plaintiff, awarding him $600 in damages for breach of warranty but concluded that the defects in the automobile did not justify rescission[2] of the sales contract. Plaintiff appeals, arguing that revocation of acceptance and cancellation of the contract was the appropriate remedy. Both defendants seek review of the judgment insofar as it awarded damages to plaintiff; however, Rod Baxter does not appear by brief or argument in this court.

This appeal presents three issues:

(1) Did the defects in the automobile substantially impair its value to plaintiff and thus entitle him to revoke his acceptance?

(2) Did a provision in the owner's manual limit plaintiff's remedies to repair or replacement of defective parts?

(3) Does lack of privity between plaintiff and defendant Saab-Scania relieve Saab-Scania of liability?

1. The instant transaction is a sale of goods governed by Article 2 of the Uniform Commercial Code. Plaintiff seeks to revoke his acceptance of the Saab pursuant to Minn.St. 336.2–608, which provides in part:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose

---

**2.** White & Summers, Uniform Commercial Code, § 8–1, p. 248; see, 21A M.S.A. § 336.2–608, U.C.C. Comment 1.

*nonconformity substantially impairs its value to him* if he has accepted it

"(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; * * *

\* \* \* \* \* \*

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." (Italics supplied.)

Minn.St. 336.2–608(3) gives the buyer the same rights he would have had if he had rejected the goods, and Minn.St. 336.2–711(1) authorizes recovery of so much of the price as has been paid, if a buyer justifiably revokes acceptance.

█ Section 336.2–608 prescribes the following requirements for an effective revocation of acceptance: (1) the goods must be nonconforming;[3] (2) the nonconformity must substantially impair the value of the goods to the buyer; (3) the buyer must have accepted the goods on the reasonable assumption that the nonconformity would be cured; (4) the nonconformity must not have been seasonably cured; (5) the buyer must notify the seller of his revocation; (6) revocation must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects;[4] and (7) the buyer must take reasonable care of the goods for which he has revoked acceptance. Defendant Saab-Scania contends that the defects in the Saab did not substantially impair its value to plaintiff, in part, because the defects already had been repaired or were easily repairable.

█ This court has not yet interpreted the substantial-impairment test of § 336.2–608. The impact of the substantial impairment is measured by the goods' loss of value to the buyer,[5] but in other respects, the language of the statute hardly provides a sensitive gauge to test the justification for any particular revocation. Indeed, two respected commentators suggest that the test ultimately rests on a commonsense perception of substantial impairment, akin to the determination of a material breach under traditional contract law. White & Summers, Uniform Commercial Code, § 8–3, p. 257. The cases that involve revo-

---

3. The car was expressly warranted to be free from defects in material and workmanship for 12 months. Goods conform to the contract when they are in accordance with the obligations under the contract. Minn.St. 336.2–106(2).

4. See, also, Minn.St. 336.2–607(3)(a). See generally, Annotation, 65 A.L.R.3d 354. Many courts find that the period in which the seller attempts to cure the nonconformity is not part of the time in which the buyer must act. E. g., *Moore v. Howard Pontiac-American, Inc.*, 492 S.W.2d 227 (Tenn.App.1972); *Four Sons Bakery, Inc. v. Dulman*, 542 F.2d 829 (10 Cir. 1976). This court took an equivalent position in cases arising before enactment of the Code. E. g., *Dougall v. Brown Bay Boat Works & Sales, Inc.*, 287 Minn. 290, 299, 178 N.W.2d 217, 221 (1970); *Federal Motor Truck Sales Corp. v. Shanus*, 190 Minn. 5, 11, 250 N.W. 713, 715 (1933).

Apparently the only changes in the car's condition not arising from its defects are the broken radio aerial and the 6,300 miles it logged. The broken aerial is a minor defect and insubstantial. See, 21A M.S.A., § 336.2–608, U.C.C. Comment 6. The mileage is more troublesome, but we find that in this circumstance it does not constitute a substantial change in condition so as to preclude revocation of acceptance. See, *Zoss v. Royal Chevrolet, Inc.*, 11 U.C.C. Rep.Serv. 527 (Ind.Super.Ct.1972). Although no specific Code provision authorizes offsetting the fair and reasonable value of the use the buyer has made of a car, several courts have taken this approach, relying on the equivalent of Minn.St. 336.1–103. E. g., *Moore v. Howard Pontiac-American, Inc. supra.* Annotation, 65 A.L.R.3d 388, § 12. We do not reach this point because defendant failed to raise it.

5. Since plaintiff advances no special circumstances, this case does not present an occasion to determine the kind of subjective test the section envisions. See, White & Summers, Uniform Commercial Code, § 8–3, p. 260.

cation of acceptance of defective new automobiles are amenable to classification by this practical criterion. Minor defects not substantially interfering with the automobile's operation or with the comfort and security it affords passengers do not constitute grounds for revocation.[6] On the other hand, if the defect substantially interferes with operation of the vehicle or a purpose for which it was purchased, a court may find grounds for revocation.[7] Indeed, substantial impairment has been found even where the defect is curable, if it shakes the faith of the purchase in the automobile.[8]

Plaintiff was plagued by a series of annoying difficulties with the Saab (the recurrent rattle and seatbelt buzz among them) as well as a difficulty that directly interfered with the Saab's operation (the repeated stalling, which began 5 months after purchase and which, despite several attempted repairs, was never remedied.) The district court found that the Saab "apparently could not, or would not, be placed in reasonably good operating condition by the Defendants or their agents or dealers." Nevertheless, the court concluded that "[s]aid breach of warranty and defects in the vehicle are not such as to constitute grounds for rescission of the contract between the parties." This conclusion, although not framed in the language of the Code, necessarily suggests that the defects did not substantially impair the value of the car to plaintiff. See, *Hays Merchandise, Inc. v. Dewey,* 78 Wash.2d 343, 474 P.2d 270 (1970). The determination of substantial impairment necessarily involves factual findings. However, once the basic facts are found, the question of whether they constitute substantial impairment is legal in character, and we need not defer to the ultimate conclusion drawn by the trial court. Cf. *In re Trust Known as Great Northern Iron Ore Properties,* Minn., 243 N.W.2d 302 (1976).

The succession of minor defects, even if considered in total, perhaps might not constitute substantial impairment; however, in combination with the frequent stalling of the Saab, plaintiff has shown substantial impairment. Other courts have recognized that repeated stalling may substantially impair the value of an automo-

---

**6.** E. g., *Reece v. Yeager Ford Sales, Inc.,* 155 W.Va. 453, 184 S.E.2d 722 (1971) (defective paint and moulding easily remedied but no engine problems); *Rozmus v. Thompson's Lincoln-Mercury Co.,* 209 Pa.Super. 120, 224 A.2d 782 (1966) (two engine mounting bolts loose); *Bill McDavid Oldsmobile, Inc. v. Mulcahy,* 533 S.W.2d 160 (Tex.Civ.App.1976) (cracked battery); *Dehahn v. Innes,* 356 A.2d 711 (Me.1976) (defects in heavy road-building equipment could be readily fixed for $200). Not permitting an automobile buyer to revoke his acceptance does not necessarily preclude him from recovering damages for minor defects, for the Code does not require an election of remedies, 21A M.S.A. § 336.2–608, U.C.C. Comment 1, and ordinarily the buyer would have an action for breach of warranty.

**7.** E. g., *Conte v. Dwan Lincoln-Mercury, Inc.,* 20 U.C.C. Rep.Serv. 899 (Conn.1976) (car required towing five times, oil leaked, cigarette lighter and electric windows malfunctioned, paint blistered, plaintiff received electric shock once while driving and dealer attempted repairs eight times; plaintiff never picked up vehicle after last repair); *Stofman v. Keenan Motors, Inc.,* 63 Pa.D. & C.2d 56, 14 U.C.C. Rep.Serv. 1252 (1973) (car stalled repeatedly, twice almost subjecting plaintiff to accidents and once requiring towing; plaintiff did not pick up car after seventh repair); *Tiger Motor Co., Inc. v. McMurtry,* 284 Ala. 283, 224 So.2d 638 (1969) (car used oil by the case, averaged 8 miles per gallon, required a new fuel pump, carburetor, piston rings, and short block, but still misfired); *Moore v. Howard Pontiac-American, Inc.,* 492 S.W.2d 227 (Tenn.App.1972) (engine missed, and parts of the body were improperly fitted causing water leaks; repairs until then were unsatisfactory and cost of further repairs would equal one-quarter of purchase price). But cf. *Collum v. Fred Tuch Buick,* 6 Ill.App.3d 317, 285 N.E.2d 532 (1972) (car sounded like a wind tunnel, vibrated, required a short block and eventually caught on fire because of the absence of an oil filter; court found plaintiff failed to prove these conditions arose from defects).

**8.** *Overland Bond & Investment Corp. v. Howard,* 9 Ill.App.3d 348, 292 N.E.2d 168 (1972) (transmission fell out and brakes went out); *Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J.Super. 441, 240 A.2d 195 (1968) (transmission needed to be replaced; court found rejection proper, revocation of acceptance alternative ground). See, also, *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wash.App. 39, 554 P.2d 349 (1976).

bile. *Conte v. Dwan Lincoln-Mercury, Inc.,* 20 U.C.C.Rep.Serv. 899 (Conn.1976); *Stofman v. Keenan Motors, Inc.,* 63 Pa.D. & C.2d 56, 14 U.C.C.Rep.Serv. 1252 (1973). The court in *Stofman* noted:

"The facts present the complaint of an ever-increasing number of consumers who purchase new automobiles but who are thereafter unable to get necessary and satisfactory adjustments made on their new cars. In many cases these highly mechanized machines with so many moving parts will require careful alterations before they will run as smoothly as they should. The question we must consider is just how long the buyer must wait and how many unfulfilled promises may be made before he is entitled to revoke his acceptance of an automobile and be returned the purchase price. Our sympathies lie with those who repeatedly return their cars for repairs or service, then get them back in almost the same condition as when the complaints were originally registered. Sympathies aside, the law, ever just, provides a remedy for the situation where such a purchaser seeks to revoke his acceptance after receipt of and payment for the goods purchased. * * * Surely an automobile that is to be driven on public roads and highways cannot reasonably be classified as fit for ordinary purposes if it is so dangerous as to stall repeatedly, presenting a threat to the safety of the driver, passengers, and all those who use our highways. Even apart from the vibrations, which of themselves amount to only an annoying disturbance, the constant stalling constituted a condition sufficient to warrant the return of the auto-

mobile." 63 Pa.D. & C.2d 58, 14 U.C.C. Rep.Serv. 1254.

■ Defendant Saab-Scania argues that the defects cannot constitute substantial impairment because they are repairable and that defendants should be permitted to make the repairs pursuant to their contractual obligation. The district court found, however, that defendants could not or would not return the Saab to reasonably good operating condition. In light of the opportunities defendants had to repair the vehicle, this finding is not clearly erroneous. Moreover, even if the defects could be repaired, that possibility does not necessarily negate substantial impairment. A seller does not have an unlimited time to deliver conforming goods. Minn.St. 336.2–608(1)(a) requires the seller to seasonably cure the nonconformity. Minn.St. 336.1–204(3) defines "seasonably" as "within a reasonable time." That period may well have passed in circumstances where the seller has been given several opportunities to cure. In both the *Conte* and *Stofman* cases, the dealers had already purportedly repaired the defective automobiles; however, that did not prevent the buyers from revoking acceptance. Accord, *Orange Motors of Coral Gables v. Dade County Dairies, Inc.,* 258 So.2d 319 (Fla.Dist.Ct.App.1972); Annotation, 65 A.L.R.3d 354, §§ 4 to 5.

The evidence demonstrates that the defects substantially impaired the value of the Saab to plaintiff. The district court therefore erred in reaching the contrary conclusion. Thus, plaintiff ordinarily would be entitled to the remedies available to a rejecting buyer pursuant to § 336.2–711(1). Defendant Saab-Scania suggests, however, that a provision in the owner's manual[9]

---

9. The owner's manual provides in relevant part: "Your franchised Saab dealer will repair or replace defective parts at no charge for parts and labor, provided, however, that it is notified of the defect within the above stated warranty period. THIS REMEDY IS THE SOLE AND EXCLUSIVE REMEDY AVAILABLE UNDER THIS WARRANTY AND ALL OTHER REMEDIES ARE HEREBY SPECIFICALLY EXCLUDED. FURTHERMORE, NEITHER SAAB–SCANIA AB, Saab-Scania of America, Inc., NOR ANY FRANCHISED SAAB DEALER

SHALL BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES RESULTING FROM A DEFECT WITHIN THE APPLICABLE PROVISIONS OF THIS WARRANTY."

Because of our disposition of this issue, we do not reach the question whether the liability limitations contained in the owner's manual, which was given to plaintiff when he took delivery of the car, were part of the agreement. See, *Cambern v. Hubbling,* 307 Minn. 168, 238 N.W.2d 622 (1976); *Dougall v. Brown Bay Boat*

limits plaintiff's remedies to the repair or replacement of defective parts.

■ 2. Minn.St. 336.2–719 authorizes a contractual limitation of remedy and specifically sanctions a repair-and-replacement clause, but it also defines the circumstances in which such limitations are valid. This statute provides in part:

"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

"(a) *the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies* to return of the goods and repayment of the price or *to repair and replacement of nonconforming goods or parts* ; and

"(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(2) *Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.*" (Italics supplied.)

A repair-and-replacement clause provides both a remedy to the buyer, whereby he may secure goods conforming to the contract, and a limitation of liability to the seller. *Beal v. General Motors Corp.*, 354 F.Supp. 423, 426 (D.Del.1973). If the repair-and-replacement clause as a remedy fails of its essential purpose, Minn.St. 336.-2–719(2) entails that its function as a limitation of the seller's liability must also fail. In such a circumstance, plaintiff may cancel the contract and recover his purchase price.

■ An exclusive remedy fails of its essential purpose if circumstances arise to deprive the limiting clause of its meaning or one party of the substantial value of its bargain. 21A M.S.A., § 336.2–719, U.C.C. Comment 1. So long as the seller repairs the goods each time a defect arises, a repair-and-replacement clause does not fail of its essential purpose.[10] But if repairs are not successfully undertaken within a reasonable time, the buyer may be deprived of the benefits of the exclusive remedy.[11] Commendable efforts and considerable expense alone do not relieve a seller of his obligation to repair. See, *Ford Motor Co. v. Taylor*, 60 Tenn.App. 271, 446 S.W.2d 521, certiorari denied (1969).

■ In the instant case, the district court implicitly found that the repair-and-replacement clause failed as an exclusive remedy, for it awarded plaintiff damages. Its explicit finding that the car could not or would not be placed in reasonably good operating condition, which was not clearly

*Works & Sales, Inc.*, 287 Minn. 290, 178 N.W.2d 217 (1970); *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J.Super. 441, 240 A.2d 195 (1968).

10. *Lankford v. Rogers Ford Sales*, 478 S.W.2d 248 (Tex.Civ.App.1972) (car was in repair shop for 45 days during a 1½-year period); *Reece v. Yeager Ford Sales, Inc.*, 155 W.Va. 453, 184 S.E.2d 722 (1971) (seller offered to repair easily remedied minor defects); *Henderson v. Ford Motor Co.*, 547 S.W.2d 663 (Tex.Civ.App.1977) (repairs were made in four trips in 3½ months).

11. *Soo Line R. Co. v. Fruehauf Corp.*, 547 F.2d 1365 (8 Cir. 1977) (applying Minnesota law; seller refused to repair); *Conte v. Dwan Lincoln-Mercury, Inc.*, 20 U.C.C.Rep.Serv. 899 (Conn.1976) (numerous repair attempts did not remedy defects); *Adams v. J. I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1 (1970) (delays in making repairs); *Beal v. General Motors Corp*, 354 F.Supp. 423 (D.Del.1973) (failure to correct defect within a reasonable time); *Riley v. Ford*

*Motor Co.*, 442 F.2d 670 (5 Cir. 1971) (repairs ineffective); *Jacobs v. Metro Chrysler-Plymouth, Inc.*, 125 Ga.App. 462, 188 S.E.2d 250 (1972) (refusal to repair); *Moore v. Howard Pontiac-American, Inc.*, 492 S.W.2d 227 (Tenn. App.1972) (repairs ineffective); *Melby v. Hawkins Pontiac, Inc.*, 13 Wash.App. 745, 537 P.2d 807 (1975) (repairs unreasonably delayed); *Ehlers v. Chrysler Motor Corp.*, S.D., 226 N.W.2d 157 (1975) (failure to repair for unreasonably long time); *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F.Supp. 39 (N.D.Ill.1970) (refusal to repair). See, *Russo v. Hilltop Lincoln-Mercury, Inc.*, 479 S.W.2d 211 (Mo.App.1972), (due to fire, car was worthless and beyond repair). See, also, *AMF, Inc. v. McDonald's Corp.*, 536 F.2d 1167, 1170, note 7 (7 Cir. 1976); *Koehring Co. v. A. P. I., Inc.*, 369 F.Supp. 882 (E.D.Mich.1974); *Kohlenberger, Inc. v. Tyson's Foods, Inc.*, 256 Ark. 584, 510 S.W.2d 555 (1974).

erroneous, compels the conclusion that the remedy failed of its essential purpose. Thus, revocation of acceptance and cancellation of the contract was a remedy available to plaintiff.

■ Plaintiff seeks to recover both consequential and incidental damages in addition to the purchase price. He failed to prove any consequential damages, and the only incidental damages proved involved repair and maintenance costs totalling $116.30. A buyer who justifiably revokes acceptance is entitled to recover incidental damages as defined in Minn.St. 336.2–715(1). 21A M.S.A., § 336.2–715, U.C.C. Comment 1; *Davis v. Colonial Mobile Homes*, 28 N.C.App. 13, 220 S.E.2d 802 (1975), certiorari denied, 289 N.C. 613, 223 S.E.2d 391 (1976). The repair and maintenance costs were expenses reasonably incurred in caring for the automobile and thus are recoverable as incidental damages. *Lanners v. Whitney*, 247 Ore. 223, 428 P.2d 398 (1967). The validity of the provisions found in the owner's manual which purportedly exclude recovery of incidental damages must therefore be considered. See, footnote 8, *supra.*

■ Minn.St. 336.2–719(2) provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter." Where a buyer has justifiably revoked acceptance, this clause precludes the invocation of a clause limiting liability with respect to the recovery of incidental damages. To withhold incidental damages from a buyer revoking acceptance is to make cancellation of the contract a less than adequate remedy. See, Restatement, Restitution, § 158; Minn.St. 336.1–103. In these circumstances, plaintiff is entitled to recover both his purchase price and incidental damages.

3. Defendant Saab-Scania suggests that it cannot be liable because, as the distributor of the Saab, it had no direct contractual relationship with plaintiff.[12] If this is the case, plaintiff may well be left without relief, for Saab-Scania was unable to assure us at oral argument of the continued existence of Rod Baxter. Although the relevant sections of Article 2 of the Uniform Commercial Code seem to require a buyer-seller relationship, Saab-Scania does not escape liability on this ground in these circumstances.

■ The existence and comprehensiveness of a warranty undoubtedly are significant factors in a consumer's decision to purchase a particular automobile. Saab-Scania evidently warrants its automobiles to increase retail sales and indirectly its own sales of Saab automobiles. When the exclusive remedy found in the warranty fails of its essential purpose and when the remaining defects are substantial enough to justify revocation of acceptance, we think the buyer is entitled to look to the warrantor for relief. If plaintiff had sued Saab-Scania for breach of either express warranty or implied warranty, the absence of privity would not bar the suit despite the language of the pertinent Code sections. *McCormack v. Hankscraft Co. Inc.*, 278 Minn. 322, 337, 154 N.W.2d 488, 499 (1967); *Beck v. Spindler*, 256 Minn. 543, 557, 99 N.W.2d 670, 679 (1959). See generally, *Milbank Mutual Ins. Co. v. Proksch*, Minn., 244 N.W.2d 105, 109 (1976). We see no reason why the result should differ merely because plaintiff has chosen to revoke his acceptance instead of suing for breach of warranty. The remedies of the Code are to be liberally administered. Minn.St. 336.1–106(1). We think liberal administration does not envision forcing a consumer to keep a car which is sufficiently defective so as to justify his returning it and then requiring him to sue the distributor for damages merely because the dealer is insolvent or no longer in business. The distributor of the automobile, who profits indirectly from retail sales, must take responsibility for the

12. See *Conte v. Dwan Lincoln-Mercury, Inc.*, 20 U.C.C.Rep.Serv. 899 (Conn.1976); *Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208 (6 Cir. 1974); *Reece v. Yeager Ford Sales, Inc.*, 155 W.Va. 461, 184 S.E.2d 727 (1971). See, also, *Henry v. Don Wood Volkswagen, Inc.*, 526 S.W.2d 483, 486 (Tenn.App.1974).

solvency of its dealers when its warranty is breached. A consumer cannot be expected to foresee the demise of local dealerships; instead he is entitled to rely on the distributor who induced him to buy the automobile. The lack of privity between the parties does not relieve Saab-Scania of liability.

Plaintiff is entitled to recover the purchase price and $116.30 incidental damages upon tender of the Saab to defendants.

Reversed and remanded with instructions to enter judgment for plaintiff in accordance with this opinion.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.