## BARCLAYSAMERICAN/BUSINESS CREDIT, INC., Respondent,

v.

## CARGILL, INCORPORATED, Appellant.

### No. C6–85–1169.

Court of Appeals of Minnesota.

Jan. 28, 1986.

Richard D. Holper, Katherine A. Constantine, Fabyanske, Svoboda & Westra, St. Paul, for respondent.

Robert L. Lowe, Lowe, Schmidthuber & Lindell, Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from a judgment entered for BarclaysAmerican (hereafter, Barclays) which succeeded to a claim of its debtor, Diesel Electric Service Corporation (Diesel), against appellant Cargill for goods and services provided. We reverse.

## FACTS

Diesel was a Minnesota corporation engaged in the repair of locomotives and the sale of re-manufactured locomotives. Following Diesel's bankruptcy in late 1981, Barclays succeeded to its accounts receivable.

Diesel made a number of sales to Cargill of locomotives destined for various Cargill facilities. Only one is at issue on this appeal, a sale to a Cargill facility in Burns Harbor, Indiana.

This sale was made on October 7, 1980, and evidenced by a Cargill purchase order.

No Diesel documents from the date of sale were produced. A Diesel invoice was sent on October 29, 1980, which included on the back of the form the following exclusive warranty:

The Company warrants that the services furnished hereunder will be free from defects in workmanship for a period of thirty (30) days from completion of service, unless otherwise specified by the Company in writing. This warranty is conditioned upon proper use, maintenance and storage of serviced equipment during the warranty period, and prompt notice from Customer as to any claimed defects in workmanship * * *

The warranty stated above is exclusive and the remedies specified for claims are the sole remedies available to Customer thereunder. NO IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, SHALL APPLY. THE WARRANTY STATED ABOVE IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES WHETHER ON GOODS OR SERVICES PROVIDED HEREUNDER.

Diesel attempted to deliver the locomotive in January, 1981, but Cargill did not have track at its facility, which was under construction, and Diesel agreed to store the locomotive. Diesel delivered the locomotive in April, 1981, and sent its servicemen to Indiana around May 8 to put it in service. Due to a continuing lack of track at the Cargill facility, the locomotive was stored by Cargill at a neighboring warehouseman's facility in Indiana. When Cargill employees attempted to put the locomotive into service in July, 1981, it would not pull a load.

When Cargill reported the problem in July, 1981, Diesel sent its servicemen to Indiana. When the problem was located, a replacement generator was sent and installed. Diesel gave Cargill a credit on the cost of the generator due to its status as a good customer, but billed Cargill for the repair. Cargill refused to pay this amount, claiming breach of the implied warranties of merchantability and fitness.

No testimony was presented as to any oral representations made at the time of sale. Barclays presented the testimony of William Hall, Diesel's vice-president and shop manager. Hall was not engaged in sales but was instead called in after a sale was made to work on the mechanical specifications. He could not testify as to the sale of the locomotive, but did testify as to the generator problem, stating that the generator was grounding and that the most likely cause was improper storage by Cargill.

Cargill presented the testimony of its maintenance supervisor at the Indiana facility as to the storage of the locomotive.

## ISSUE

Did the trial court err in finding that an exclusive 30-day warranty notice was provided at the time of sale?

## ANALYSIS

Minnesota law provides that an exclusive warranty, to exclude implied warranties, must be provided at the time of sale. *Dougall v. Brown Bay Boat Works and Sales, Inc.*, 287 Minn. 290, 298, 178 N.W.2d 217, 222–23 (1970). The trial court found that

[t]he terms of the warranty were provided on the reverse side of the invoices issued by Diesel to Cargill for the original purchase and subsequent service in July or August, 1981, of the Indiana Locomotive.

Evidence of the sale transaction was sparse. There was no testimony from individuals involved in negotiating the sale. Hall, who supervised the shop and was normally called in after sales negotiations were complete, testified as to general practices at Diesel. He stated on cross-examination:

Q So, to your knowledge, there is nothing regarding a warranty that was ever delivered or communicated to Cargill other than what's—what

you're talking about on the back of the invoice.

A (Witness nodded.)

Q You don't know of any others.

A No.

Q And you don't know of any delivery of that to Cargill other than when the invoice was sent out, correct?

A Correct.

Q And that would have been the reverse side of it.

A It would have been on the original quote.

*   *   *   *   *   *

A It would have been on the quote. That warranty and everything is— was on every piece of paper we sent out of our office. That same boiler plate.

■  The earliest invoice submitted as an exhibit was dated October 29, 1980. Since the sale occurred on October 7, this notice of exclusive warranty was ineffective.

■  The only evidence of a timely exclusive warranty was the testimony of Hall. This testimony was insufficient to support a finding of a timely communication of exclusive warranty. Hall, who was not directly involved in sales, could not testify as to this particular transaction. Even if all Diesel documents included the language of exclusive warranty, there is no evidence that a sales quote or other Diesel document was transmitted to Cargill on October 7, 1980.

The trial court made no finding as to the cause of the locomotive malfunction, but concluded:

The [exclusive 30-day] warranty, if any, had expired and was inapplicable due to improper storage.

This implied finding of improper storage was not a finding that no defect existed in the locomotive as sold.

### DECISION

The trial court erred in finding that an exclusive warranty was communicated at the time of sale.

Reversed.